THE CITIZENS BANK v. THE CITY OF TERRELL.

No. 3167.

1. **Municipal Bonds.** — A city can not create a debt unless the power to do so is either expressly or impliedly conferred upon it by law.

2. **Same.** — If the law authorizes the creation of debt for a specified purpose, but limits the amount and prescribes the manner of creating such debt, any attempt to create one greater than the amount specified, or without substantially observing the regulations prescribed, would be without force.

3. **City Water Works Bonds.** — While our Constitution authorizes the creation of a debt and the issuance of negotiable bonds by cities to provide for constructing water works, its mandate is imperative that no such debt shall be created without making provision at the time of its creation to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent on the principal.

4. **Constitutional Limit of Bonded Indebtedness.** — The Constitution in effect commands that a city with less than 10,000 inhabitants shall, in order to create a debt, take its latest assessment of property for taxes and from that ascertain how much money a tax of twenty-five cents on each hundred dollars of valuation will produce; and it may create a debt that that amount will provide for the payment of the interest thereon and two per cent per annum additional.

5. **Same.** — The command of the Constitution that no debt shall be created without at the same time providing for the levy and collection of a tax for its payment was evidently designed not more to insure the payment of honest debts than to admonish the people whose property was being charged with them of that fact. The other provision limiting the amount of debt cities can charge themselves with has its foundation in a wise public policy. These restrictions were made for observance, not evasion.

6. **Void Issuance of Bonds.** — When the debt is void in its inception for want of authority to create it, no subsequent ratification of it by the collection of taxes or otherwise can give it any validity; nor can there be any such a thing as a bona fide holder of the obligations with a right to collect them notwithstanding the want of power in the city to create the debt.

7. **Municipal Bonds — Cases Discussed.** — Coloma v. Eaves, 92 U. S., 490; Marcy v. Town of Oswego, 92 U. S., 641; Dixon County v. Field, 111 U. S., 94, cited and approved.

8. **Same—Constitutional Provisions.**—The command of our Constitution is that when the debt is created provision shall then be made for levying and collecting a tax to discharge it. It amounts to more than a direction that no debt shall ever be created above such a sum as the directed levy will pay. The Constitution will not be obeyed unless it shall be ascertained when and before a debt is created whether one-fourth of one per cent or less on the taxable valuation will annually pay the interest and sinking fund.

9. **Taxable Valuation.**—As a limit upon the amount of debt the city can incur it must look to the assessment tax rolls taken for the city and under its authority.

10. **Assessment by City Authorities—Recitals.**—It is settled that when the law that limits the debt by valuation directs that the valuation shall be ascertained by an assessment, such assessment governs and can not be overcome by any mere recitals that the fact is otherwise.

11. **Current Revenue.**—A city council can not permanently divert any part of the *current revenue* for the payment of the principal and interest of its bonded debts. That revenue is always under the control of the council for the support of the city government.

12. **Profits from City Water Works.**—Such profits would be under control of the city council and is not a basis for the creation of a debt.

13. **Case in Judgment.**—December 12, 1883, the city council of Terrell provided for issuing twenty-eight bonds of $1000 each. Its taxable valuation did not exceed $909,000. On June 25, 1884, the council enacted that the entry in its former order should be changed by erasing *twenty-eight* and inserting *thirty-five* for number of bonds. This alteration was never made. *Held:*

1. The order of December 12, 1883, was valid for such amount as a tax of twenty-five cents upon the one hundred dollars of valuation according to the last taken assessment would provide for.

2. The action of the council of June 25, 1884, was a nullity.

3. If the bonds were delivered at different dates, then those first delivered, to the amount provided for, would be valid; the others invalid.

4. If the bonds were delivered at the same time the *valid* debt should be distributed equally between such bonds.

5. The bonds issued under the order of June 25 can not be treated as valid for any purpose.

6. If no other means exist to determine which bonds were first issued, from necessity the numbers must be looked to to determine the fact.

7. The coupons follow the condition of the bonds to which attached.

APPEAL from Kaufman. Tried below before Hon. Anson Rainey.

This is a suit brought by the Citizens Bank of Texarkana, Texas, in the County Court of Kaufman County, August 31, 1886, against the city of Terrell, Texas, to recover the amount alleged to be due on six coupons issued by the city for $70 each, payable to bearer, and each due on the 1st day of May, 1885. The county judge being disqualified, the cause was transferred to the District Court November 27, 1888. The city of Terrell answered (1) by general denial; (2) failure of consideration, alleging that the coupons sued on were delivered to Brown & Layne without consideration and with the agreement that said coupons were not to be negotiated, and charging that plaintiff had full notice of these facts, and praying that said Brown & Layne be made parties defendant, and in case the plaintiff recover against it that it have judgment over against the said

Brown & Layne; and (3) pleading that the coupons sued on were a part of a series of water works bonds issued by the city without authority of law, and that said bonds and the coupons herein sued on were *ultra vires* and void.

The plaintiff by supplemental petition denied any notice or knowledge of any defect in the coupons, and alleged that the coupon bonds were regularly and properly issued and ample provision made at the time for their payment.

The cause was tried on December 6, 1889, before the court without a jury, and judgment rendered in favor of defendant, from which plaintiff appealed.

*John Vesey* and *Wm. H. Allen*, for appellant. — 1. The court erred in holding that the ordinance passed by the city council June 25, 1884, directing the city secretary to erase the words "twenty-eight" in the ordinance of December 12, 1883, and to substitute the words "thirty-five" was void, when it is apparent that said ordinance of June 25, 1884, was intended and did operate as an amendment to the former ordinance. The city council of Terrell had a right to amend, alter, or repeal its ordinances, and, however awkwardly this intention may have been expressed, if it be apparent that the ordinance of June 25, 1884, was intended by the city council to amend the ordinance of December 12, 1883, it should be given that effect, and the ordinance of December 12, 1883, as thus amended, should be enforced. Rev. Stats., art. 3138, sec. 6; Rev. Stats., art. 418; Cannon v. Vaughan, 12 Texas, 399; United States v. Freeman, 3 How., 556; Henderson v. Wickham, 2 Otto, 259.

2. The court erred in holding the bonds issued by the city of Terrell void, when the court had found as a fact that said bonds did not exceed in amount 6 per cent of the property subject to ad valorem tax in said city, and that the city in issuing said bonds had made provisions for their payment, and that said city had continued to pay the same as far as able. The court erred in not giving judgment for the plaintiff for the amount of the coupons sued on, when it appeared that the ordinance under and by virtue of which the coupons were issued and negotiated was still in force and had never been repealed nor the debt for which said bonds were given had ever been repudiated. The city of Terrell had a right to issue the water works bonds to the amount of 6 per cent of its taxable values. The whole amount of its water works bonds, on a part of which the coupons herein represented the interest for the first year, was only $35,000. The value of the property in the city of Terrell for the year 1884, the time of the issuance of the bonds, was $908,976. In 1889 its values were $921,-421, and the lowest its values ever reached at any intervening time was $876,637. Const., art. 8, sec. 9; Acts 1884, pp. 3, 84; Rev. Stats., arts. 370, 371, 374, 420; Waxahachie v. Brown, 67 Texas, 519.

3. The bonds thus issued by the city and the coupons thereon are negotiable paper, and a purchaser in good faith for value before maturity should be protected. The court finds that the plaintiff was the owner of the coupons sued on without any knowledge of defects therein. Bank and Ins. Co. v. Turnley, 61 Texas, 365; 1 Dill. on Mun. Corp., sec. 513. White v. Railway, 21 How., 575; Evertson v. Bank, 66 N. Y., 14; Bank v. Railway, 8 R. I., 373; Spooner v. Holmes, 102 Mass., 503; Craig v. Vicksburg, 31 Miss., 217; Clay v. City, 10 Wis., 140; Blake v. Livingston, 61 Barb., 149.

4. The city of Terrell having made provision in the ordinance authorizing the issuance of the water works bonds ample on its face to fully pay off and discharge the interest on said bonds and create a sinking fund of 2 per cent, it is no defense to an action for debt on such bonds that the provision made has either from inability or from misappropriation proven insufficient. Especially is the city estopped from making this defense when, as in this case, the ordinance has never been repealed and the debt never repudiated, but upon the contrary the taxes are still being levied and collected for this purpose, and all the coupons of the same date as the ones sued on have in fact been paid. Commissioners v. Beal, 113 U. S., 227; Clay County v. Bank, 104 U. S., 579; Marshall County v. Schenck, 5 Wall., 772; Gelpecke v. Dubuque, 1 Wall., 175.

*J. O. Terrell* and *Word & Charlton*, for appellee.— 1. We deny appellant's proposition under its first assignment of error, and submit the following counter-proposition thereto:

The city having issued on May 1, 1884, $35,000 bonds, instead of $28,-000, as provided by the ordinance of December 12, 1883, could not validate this overissue by ordinance of June 25, 1884, which merely directed the secretary to erase from the first ordinance the words " twenty-eight " and to insert instead thereof the words " thirty-five."

2. We deny appellant's first proposition under its second and third assignments of error, and submit the following counter-propositions thereto:

(1) The city of Terrell had no power in 1884 to issue bonds for the purpose of securing water works for said city.

(2) The taxable values of said city not exceeding $909,000, it had no power to issue bonds for water works in the sum of $35,000, running fifty years and bearing 7 per cent per annum interest. And under such circumstances said city had no power to issue $28,000 bonds, running fifty years and bearing 7 per cent per annum interest.

(3) The city had no power to create a debt in such sum as that a tax of one-fourth of one per cent on her taxable values would not pay the annual interest and provide a sufficient sinking fund to discharge it at maturity. Const., secs. 5, 7, art. 11; Const., sec. 9, art. 8; Gen. Laws 1884, p. 3; Rev. Stats., arts. 420, 421, 424, 425, 427; New Orleans v.

Clark, 95 U. S., 652; Dixon County v. Field, 111 U. S., 85; Waxahachie v. Brown, 67 Texas, 531; Gould v. Paris, 68 Texas, 514; Terrell v. Dessaint, 71 Texas, 770; Lake County v. Rollins, 130 U. S., 662; Lake County v. Graham, 130 U. S., 674; Bagby v. Bateman, 50 Texas, 457; 1 Desty on Tax., p. 480; 2 Desty on Tax., pp. 1055, 1063–1065, 1077; Buchanan v. Litchfield, 102 U. S., 278; School District v. Stone, 106 U. S., 184; Cool. on Tax., p. 101.

3.   We deny appellant's second proposition under its second and third assignments of error, and also its statement thereunder.   Buchanan v. Litchfield, 102 U. S., 278; Dixon County v. Field, 111 U. S., 85; Marcy v. Oswego, 92 U. S., 637.

4.   The city not having the power to issue said bonds in the first instance can not in any manner estop itself to question their legality or validity as against one who is not an innocent holder of same.   Bige. on Estop, 4 ed., 530, 533; McPherson v. Foster, 43 Iowa, 48; Schaeffer v. Bonham, 95 Ill., 368; South Ottowa v. Perkins, 94 U. S., 260; Anthony v. Jasper, 101 U. S., 693; Bank v. Porter, 110 U. S., 608; Dill. on Mun. Corp., secs. 457, 546; Commrs. v. Rollins, 130 U. S., 662.

HENRY, ASSOCIATE JUSTICE.—Appellant instituted this suit in the County Court, from which it was transferred to the District Court, to recover upon six coupon notes for $70 each, charged to have been executed by appellee, a municipal corporation under the general laws of this State, having a population of less than 10,000 inhabitants.

The defendant pleaded its want of authority under the Constitution and laws of this State to execute the obligations.   The cause was tried by the court without a jury and judgment was rendered for the defendant.   The facts as found by the court are as follows:

The city, through its council, on the 12th day of December, 1883, authorized the issuance of its bonds for the sum of $28,000, in sums of $1000 each, to run fifty years and bearing interest at the rate of 7 per cent per annum, to provide for the payment of the cost of constructing a system of water works for the city.

It at the same time passed an ordinance levying a tax of one-fourth of one per cent upon the taxable property within the city, and appropriating one-tenth of the tax (one-fourth of one per cent) annually levied to defray the current expenses of the city; and also appropriated the net revenues arising from the water works to be constructed, after paying all expenses for the necessary repairs and the operation thereof, for the purpose of creating a fund for the payment of the interest upon the bonds and providing a sinking fund of 2 per cent upon the principal of the debt.

Afterwards, on the 25th day of June, 1884, the city council passed another ordinance directing the city secretary to erase the words "twenty-eight" in the ordinance of the 12th day of December, and insert in the

ordinance in lieu of the erased words the words "thirty-five," which was never done.

The taxable values of the city at the date of the issuance of the bonds did not exceed the sum of $909,000.

In pursuance of the two ordinances there were issued thirty-five water works bonds, dated the first day of May, 1884, all of the denomination of $1000, running for fifty years, bearing 7 per cent interest per annum payable annually.

These bonds were registered in the office of the State Comptroller on the 7th day of July, 1884, and were all negotiated by the city and are still outstanding.

The coupons now sued upon are payable to bearer, and represent bonds numbered 1, 7, 13, 19, 25, and 31.

It was agreed that the assessed value of taxable property within the city was $749,363 for the year 1883, and was $908,976 for the year 1884.

The court concluded that the ordinance of the 25th day of June was a nullity, and that the coupon representing the interest on bond No. 31 was therefore void. Also that the city had no power under its charter to issue the thirty-five bonds without providing a sufficient fund to pay the annual interest and provide a 2 per cent sinking fund on the principal, and that on account of its failure to so provide all of the coupons sued upon are void.

Judgment was rendered for the defendant.

The constitutional provisions in force when the ordinance of the 12th day of December, 1883, was adopted are as follows:

"No county, city, or town shall levy more than 25 cents for city or county purposes, and not to exceed 15 cents for roads and bridges on the $100 valuation, except for the payment of debts incurred prior to the adoption of this amendment; and for the erection of public buildings, street, sewer, and other permanent improvements not to exceed 25 cents on the $100 valuation in any one year, and except as is in this Constitution otherwise provided." Art. 8, sec. 9.

"Cities and towns having a population of 10,000 inhabitants or less may be chartered alone by general law. They may levy, assess, and collect an annual tax to defray the current expenses of their local government, but such tax shall never exceed for any one year one-fourth of one per cent, and shall be collectable only in current money." Art. 11, sec. 4.

"No debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent thereon." Art. 11, sec. 5.

And again, "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the inter-

est thereon and provide at least 2 per cent as a sinking fund." Art. 11, sec. 7.

A city can not create a debt unless the power to do so is either expressly or impliedly conferred upon it by law.

If the law prohibits the creation of a debt for any purpose, then no attempt to create one would have any force.

If the law permits the creation of debts for specified purposes only, an attempt to create one for a purpose not specified would be without validity.

If the law authorizes the creation of debt for a specified purpose, but limits the amount and prescribes the manner of creating such debt, any attempt to create one greater than the amount specified, or without substantially observing the regulations prescribed, would be equally without force.

When the law makes the existence of the power to issue bonds depend upon the existence of a given state of facts, which depend for proof of their existence upon parol evidence, and appoints a tribunal to ascertain the facts and to create the debt and issue negotiable bonds, if it finds that the required facts exist, and the bonds are issued and contain recitals that the facts existed that conferred authority to issue them, and such negotiable bonds go into the hands of bona fide holders, they are collectable, notwithstanding the nonexistence of the facts required to confer the authority to issue them.

In such cases the validity of the bonds does not exist in disregard or violation of the law, but because the ascertainment of the facts that confer the power has been delegated to the body that issues them, and its ascertainment of the facts is held to be conclusive in favor of the innocent holders of the negotiable securities, against which no evidence will be heard.

But where the authority to create a debt at all, or beyond a given amount, is made to depend upon evidence furnished by official records, the same rule with regard to recitals contained in bonds given for the debt should not be applied.

Every holder of such bonds is charged with knowledge of all provisions of law relating to their issuance, and if the law points to records as evidence of the existence of the facts required to authorize their issuance or to limit the amount of the debt that the city may create, such records, and not the recitals in the bonds, must be looked to by every one who proposes to deal in the bonds.

While our Constitution authorizes the creation of a debt and the issuance of its negotiable bonds by the defendant city to provide for constructing water works, its mandate is imperative that no such debt shall be created without making provision at the time of its creation to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent on the principal.

Until that is done the debt is not created and none exists. If not for-

bidden by another provision of the Constitution, the levy may provide for the collection of a greater sum than the interest contracted for and 2 per cent additional, but it can not be less than that.    The language is plain and unambiguous, and in relation to cities the command is twice given.

The provision must be sufficient when made. If subsequently it becomes either more or less than sufficient the validity of the obligation would not be affected.

By another provision of the Constitution the percentage on the assessed value that may be levied is limited.

The Constitution in effect commands that a city with less than 10,000 inhabitants shall in order to create a debt take its latest assessment of property for taxes and from that ascertain how much money a tax of 25 cents on $100 of valuation will produce, and it may create a debt that that amount will provide for the payment of the interest on and 2 per cent per annum additional.

The rule applies with all its force to cities having more than 10,000 inhabitants, except that the limit of the percentage of taxation is greater.

We deem it unnecessary to consider or discuss the articles of the Revised Statutes relating to the question.    Some of these had their origin before the adoption of our present Constitution.    So far as the statutes can be harmonized with the requirements of the Constitution they will furnish useful guides and must be observed.    When they are in conflict with it or lead to a different result they must be disregarded.

The command of the Constitution that no debt shall be created without at the same time providing for the levy and collection of a tax for its payment, was evidently designed not more to insure the payment of honest debts than to admonish the people whose property was being charged with them of that fact.

The other provision limiting the amount of debt that cities can charge themselves with had its foundation in a wise public policy.

These constitutional restrictions were made for observance, not evasion.

A disregard of them by the attempted creation of unlawful debts, either on account of the purpose or the amount, may lead to serious complications in the administration of the affairs of the municipal government, growing out of questions that they may give rise to as to whether the property of delinquent tax payers can be sold so as to confer any right upon the purchaser when the void debt enters to any extent into the tax for which the sale is made.

When the debt is void in its inception for want of authority to create it, no subsequent ratification of it by the collection of taxes or otherwise can give to it any validity, nor can there then be such a thing as a bona fide holder of the obligations, with a right to collect them notwithstanding the want of power in the city to create the debt.

Questions with regard to the validity of municipal bonds have frequently

been considered by the Supreme Court of the United States. As there is scarcely any issue of such bonds that may not be brought directly before that court, its decisions relating to them are of the first importance.

That court, in the case of Town of Coloma v. Eaves, 92 United States, 490, speaking of the issuance of such bonds and the rights of a bona fide holder of them growing out of their recitals, says:

"Apart from and beyond the reasonable presumption that the officers of the law, the township officers, discharged their duty, the matter has passed into judgment. The persons appointed to decide whether the necessary prerequisites to their issue had been completed have decided and certified their decision. They have declared the contingency to have happened on the occurrence of which the authority to issue the bonds was complete. Their recitals are such a decision, and beyond these a bona fide purchaser is not bound to look for evidence of the existence of things *in pais*. He is bound to know the law conferring upon the municipality power to give the bonds on the happening of a contingency; but whether that has happened or not is a question of fact, the decision of which is by the law confided to others—to those most competent to decide it—and which the purchaser is, in general, in no condition to decide for himself. This we understand to be the settled doctrine of this court. Where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a bona fide purchaser, is conclusive of the fact and binding upon the municipality, for the recital is itself a decision of the fact by the appointed tribunal."

The case of Marcy v. Township of Oswego, 92 United States, 641, arose under a law of the State of Kansas containing a proviso "that the amount of bonds voted by any township should not be above such a sum as would require a levy of more than 1 per cent per annum on the taxable property of such township to pay the yearly interest."

The court held that the existence of sufficient taxable property to warrant the amount of the issue was an intrinsic fact, "bearing not so much upon the authority vested in the board to issue the bonds as upon the question whether the authority should be exercised;" that as that fact, with others, was referred by the statute to the inquiry and determination of the board, "and they were all determined before the bonds and coupons came into the hands of the plaintiff, he was not bound when he purchased to look beyond the act of the Legislature and the recitals which the bonds contained."

In the case of Dixon County v. Field, 111 United States, 94, it is said, after quoting the language used in the case of Town of Coloma v. Eaves, that "The converse is embraced in the proposition and is equally true. If the officers authorized to issue bonds upon a condition are not the

appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof.

"The differences in the results of the judgments have depended upon the question, whether in the particular case under consideration a fair construction of the law authorized the officers issuing the bonds to ascertain, determine, and certify the existence of the facts upon which their power by the terms of the law was made to depend; not including of course that class of cases in which the controversy related, not to conditions precedent on which the right to act at all depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being."

In this case the Constitution of the State of Nebraska, under which the question arose, limited the amount of the debt that could be created to "10 per cent of the assessed valuation."

Upon this point the opinion holds that the amount of the assessed value of the taxable property was ascertainable only by a reference to the assessment itself, "a public record equally accessible to all intending purchasers of bonds as well as to the county officers;" and that the county officers "are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions and the performance of their duty; but the information is for themselves only. All the world besides must have it from the same source and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic and proves itself by inspection, and concludes all determinations that contradict it."

The command of our Constitution is that when the debt is created provision shall then be made for levying and collecting a tax to discharge it. It amounts to more than a direction that no debt shall ever be created above such a sum as the directed levy will pay.

The Constitution will not be obeyed unless it shall be ascertained, when and before a debt is created, whether one-fourth of one per cent or less on the taxable valuation will annually pay the interest and sinking fund.

The debt is not to go beyond what a tax can be levied to pay, and the clause in the Constitution that defines how much may be levied shows that it is to be done on a "valuation," one meaning of which, given by Webster, is "appraisement, as a valuation of lands for the purpose of taxation."

The Constitution provides for the election of an assessor of taxes.

No ad valorem tax has ever been collected in this State otherwise than through carefully regulated assessments.

It is not practicable, if it can be said to be possible, to arrive at correct taxable values through any other means than an assessment.

We would be compelled to ignore common sense and reject all experience before we could hold that when the Constitution imposed upon cities

the duty of ascertaining the valuation of their taxable property, it contemplated that they should look to any other source for the information than their own assessment rolls, taken for the purpose alone of furnishing such information.

We are unable to conclude that the Constitution, while intending to so strictly limit the creation of a debt to a percentage on valuation, contemplates that a city council may disregard official assessments and adopt, according to their pleasure, any other means or no means of ascertaining the required fact.

Then there would be no limitation upon the power of the council to involve the city in debt through the issuance of negotiable bonds. It is true that on account of the limited tax that can be levied the debt might never be paid. Neither the removal nor the punishment of the officers who perpetrated the wrong would cancel the unlawfully created debt.

It is firmly settled by the highest authority that when the law that limits the debt by valuation directs that the valuation shall be ascertained by an assessment, such assessment governs and can not be overcome by any mere recitals that the fact is otherwise.

The right to be protected from unlawful taxation is one of the most important that belongs to the citizens of this State.

There is nothing in the record before us showing when any of the bonds were issued, nor whether they were all disposed of at the same or at different dates. There is nothing to distinguish those issued under the last ordinance from those issued under the first one, unless we can look for that purpose to the numbering of the bonds.

The city had no authority to pledge or appropriate any part of the current revenues to the payment of the principal or interest of the debt. That fund is devoted by the Constitution to the support of the city government, and is always under the control of the council for that purpose. The net proceeds from the water works, if there had been such, would have likewise been under the control of the council, and was not a basis for the creation of debt.

The action of the council on the 25th day of June, 1884, was utterly void. The ordinance of the 12th day of December, 1883, was valid for such an amount as a tax of 25 cents upon the $100 of valuation, according to the last taken assessment of the taxable values of the city, would provide for.

If the bonds were delivered at different dates, those first delivered, up to the amount of the debt that the city could lawfully create, should be paid, and the remainder of them should be treated as nullities. Daviess County v. Dickson, 117 U. S., 657.

If all of the bonds under the first ordinance were delivered at the same time, so that none of them have priority over the others, the amount of

valid debt should be distributed equally between said bonds. McPherson
v. Foster, 43 Iowa, 72.

The bonds that were issued under the last ordinance can not be treated
as valid for any purpose.   Which of the bonds were so issued should not
be determined by their numbers alone if there exists any other means of
identifying them.   If no other means exist of distinguishing them from
the others, then from the necessity of the case the numbers must be looked
to to determine the fact, and the bonds above the number twenty-eight
must be held to be those issued under the last ordinance.   The coupons
will of course be governed by the principles applied to the bonds from
which they were detached.

Under the view we take of the law, the original holders, as well as any
subsequent holders, of the bonds or coupons may recover so much of the
debt as was lawful.

. Neither the pleadings nor the proof in the record before us present the
case so as to authorize a judgment of the nature indicated by us as being
proper.   Strictly speaking, no judgment other than the one from which
the appeal was taken could have been rendered.   We think it right, how-
ever, to give the appellee an opportunity to amend his pleadings and have
the issues so presented as to show what proportion of the debts sued on
he may be entitled to recover, under the rules that we here announce.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered December 5, 1890.