QUAKER CITY NAT. BANK v. NOLAN COUNTY.

(Circuit Court, N. D. Texas. January 31, 1894.)

No. 1,487.

1. COUNTY BONDS—INNOCENT PURCHASERS—NOTICE OF RECORDS.
   When the laws or constitutional provisions relating to the issuance of county bonds point to the county records as evidence of facts required to authorize their issuance, such records, and not the recitals in the bonds, must be looked to by all persons proposing to deal in them.

2. SAME—VALIDITY—CONSTITUTIONAL REQUIREMENTS.
   County bonds are invalid, even in the hands of bona fide purchasers, when issued without compliance with a constitutional requirement that

provision shall be made, at the time of incurring any debt, for levying a sufficient tax to create a sinking fund of 2 per cent. in addition to meeting the interest. Const. Tex. art. 11, § 7.

3. SAME—LEGISLATIVE POWERS—VALIDATING INVALID BONDS.
The legislature has no power to validate county bonds issued in violation of constitutional provisions, which are alive and in force at the date of the validating act.

4. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
A decision of a state supreme court, sustaining a statute which validates certain county bonds, is not controlling on a federal court, when it appears that the bonds were void for failure to comply with a provision of the state constitution, but that this point was not called to the attention of the state court, and its decision was based on other grounds.

At Law. Action by the Quaker City National Bank against Nolan County, Tex., on coupons cut from certain county bonds. Tried by the court on an agreed statement of facts. Judgment for defendant.

Williams & Butts, for plaintiff.
Leake, Henry, Miller & Reeves and Cowan & Fisher, for defendant.

RECTOR, District Judge. In this case the plaintiff sues the defendant on 18 coupons, of $80 each, detached from bonds 6, 7, and 8, of $1,000 each, issued by Nolan county on or about April 10, 1882, and delivered to Martin, Byrne & Johnson. Plaintiff also sues, in this case, on 24 coupons, of $80 each, detached from bonds 1, 2, 3, and 4, issued by Nolan county, and delivered to Mathews & Whitaker, each of said bonds calling for $1,000, and dated April 10, 1882. Plaintiff also sues on 18 coupons, of $80 each, detached from bonds 24, 25, and 26, for $1,000 each, issued by Nolan county on June 21, 1882, and delivered to Wernse & Diechman. Plaintiff also sues on 6 coupons of $80 each detached from bond No. 27, issued by Nolan county, dated June 21, 1882, for the sum of $1,000, and delivered to Flippen, Adoue & Lobit.

The defendant answered by a general denial, and further pleads that, before any of said bonds were executed or delivered, defendant had already created, and there were then existing and outstanding against it, other debts fully equal to its lawful power to make debts. Defendant charges that, among the debts so existing and outstanding against it, are four bonds, of $1,000 each, issued on the 5th day of April, 1882, to Martin, Byrne & Johnson, numbers 1 to 4, inclusive, and now owned by the state of Texas, and five bonds, for the sum of $1,000 each, numbered 10, 11, 12, 13, and 14, referred to in the orders of the commissioners' court of said county, of the dates February 18, 1882, March 22, 1882, and April 15, 1882, and that said five bonds are now owned by the state of Texas. That all of said nine bonds were void in their inception, but they were validated from their original issue, in favor of the state of Texas, by the act of the legislature of said state approved the 25th day of May, 1885. Then defendant says the total assessed value of its taxable property, as shown by its assessment rolls, was as follows: For the year 1881, $361,770; for the year 1882, $908,-

276; for 1883, $1,684,615; for 1884, $1,953,755; for 1885, $1,855,278.

2. A jury was waived. The agreed statement of facts in this case is as follows:

"Quaker City National Nank v. Nolan County.

"Now comes the Quaker City National Bank, plaintiff, by Williams & Butts, its attorneys, and Nolan county, defendant, by Leake, Henry, Miller & Reeves and Cowan & Fisher, its attorneys, and, for the purpose of a trial of the above-stated cause, agree to the following facts, to wit:

"(1) The county of Nolan, defendant, was organized in January, (10th,) 1881, and thereupon became, and ever since hath remained, and still is, a body corporate and politic, and the first term of its commissioners' court was held on the 28th day of January, 1881.

"(2) The total assessed value of property, as assessed for the county of Nolan for the year 1881, was $361,770.00; for the year 1882, $908,276.00; for the year 1883, $1,684,615.00; for the year 1884, $1,953,755.00; for the year 1885, $1,855,278.00; for the year 1886, $1,756,814.00; and for the year 1887, $1,757,061.00.

"(3) By statute law, in force in Texas from 1876 to the present time, the assessment of all property for taxation in the several counties is required to be made by the assessor between the 1st day of January and the 1st day of June of the current year, with reference to the quantity held or owned on the 1st day of January in the year for which the property is required to be listed or rendered. The assessor is required to submit all lists of property rendered to him prior to the first Monday in June to the board of equalization, which is composed of the county commissioners' court of his county, on the first Monday in June, or as soon thereafter as practicable, for their inspection, approval, and correction, or equalization, and, after that board shall have returned the approved lists to the assessor, he shall then make out his rolls in triplicate, one of which is required to be filed in the county clerk's office, and one in the office of the state comptroller, and one to be delivered to the county collector, which must be done on or before the 1st day of October of the year, if possible, at which time the collection of taxes begins.

"(4) On February 14, 1881, the county commissioners' court of Nolan county entered an order of record, levying a tax of one-fourth of one per centum for courthouse purposes, and a tax of one-fourth of one per centum for jail purposes. At this time Nolan county owed no courthouse debt.

"(5) On May 11, 1881, the county commissioners' court of Nolan county ordered that bids to build a jail, to cost not exceeding $10,000.00, be advertised for. On May 11, 1881, the county commissioners' court advertised for bids to build a jail, not to exceed in cost $10,000.00; and on June 14, 1881, plans of Martin, Byrne & Johnson for the said jail were adopted, and contract awarded them, at a cost of $8,755.00, to be paid in coupon bonds of the county, and, on October 4, 1881, a committee was appointed by the county commissioners' court of Nolan county to see that the contract for jail and courthouse combined was properly carried out.

"(6) On April 5, 1882, an order was entered on the minutes of the county commissioners' court, receiving the jail, as built by Martin, Byrne & Johnson, and authorizing the county judge (who was Wm. Barnett) to receive the keys and settle for the same. Some time after this, about April 10, 1882, Wm. Barnett, as county judge, and W. C. Johnson, as county clerk, issued nine bonds in the name of said county, eight of them for the sum of one thousand dollars, and the other for the sum of seven hundred and fifty-five dollars, and delivered the said bonds to the contractors, Martin, Byrne & Johnson, in payment for the said jail. There is no order on the minutes of the commissioners' court of said county, authorizing the county judge and county clerk, or any one else, to issue and deliver the said bonds, unless the above, in connection with the orders mentioned in the fifth clause of this agreement, is construed to be such authority, which is a question left open, to be decided by the court on the trial of this cause. The bonds first mentioned in plaintiff's petition as numbers 6, 7, and 8, being three of these bonds. Following is a copy of one of said bonds, all of which are of the same tenor

and effect, and contain the same recitals, save as to amount, date, time of maturity, and serial number:

" 'United States of America.

" 'No. 5.    $1,000.00.

" 'Courthouse Coupon Bond.

" 'Nolan County, State of Texas.

" 'Know all men by these presents, that the county of Nolan, in the state of Texas, acknowledges itself indebted unto Martin, Byrne & Johnson, or bearer, in the sum of one thousand dollars lawful money of the United States of America, which sum the said county promises to pay, for value received, at Sweetwater, Nolan county, Texas, ten years after the date hereof, but redeemable at any time at the pleasure of said county, together with interest thereon at the rate of eight per centum per annum, payable annually, on the 10th day of April in each year, on presentation and surrender of coupons hereto attached, as they severally become due and payable. This bond is issued in accordance with the provisions of an act of the legislature of the state of Texas, entitled "An act authorizing the county commissioners' court of the several counties of this state to issue bonds for the erection of a courthouse, and to levy a tax to pay for the same," approved February 21st, 1879.

" 'In testimony whereof, I hereunto affix my official signature, and official seal of said county, at Sweetwater, Texas, this the 1st day of December, A. D. 1881.    William Barnett,

" 'Judge County Court, Nolan County, Texas.

" '[Seal of Commissioners' Court.]

" 'Countersigned:

" 'W. C. Johnson, Clerk County Court, Nolan County, Texas.

" 'Registered 10th day of January, A. D. 1882.

" 'J. H. Fowler, County Treasurer, Nolan County, Texas.'

"(7) On February 18, 1882, the county commissioners' court of Nolan county entered an order of record that a courthouse should be built at the county seat, during the year 1882, at a cost of not less than $20,000.00, and that $20,000.00, in 15-year coupon bonds, bearing interest at the rate of eight per centum per annum, be issued, and at once sold, and the proceeds applied to the building of the courthouse, said bonds to be redeemable at the pleasure of the county at any time after ten years from date, and J. W. Posey was appointed the agent of the county to sell said bonds at a commission of ten per cent. for his services, which commissions were to cover all costs of lithographing and disposing of said bonds.

"(8) On March 29, 1882, it was ordered by said court that the cost of the courthouse should not exceed $23,000.00, and said Posey was continued as the agent of the county to sell the bonds, authorized to fill in the blank spaces with the names of the purchasers, and ten per cent. commissions awarded him, which commissions were to cover all discounts and cost of selling, as well as preparing, the bonds. On April 15, 1882, the county commissioners' court amended the order of February 18, 1882, so as to make the bonds redeemable at the pleasure of the county at any time after ten years, which redeemable clause has been interlined in the previous order also. The $20,000.00 15-year, 8 per cent. coupon bonds, that had been printed under the original order, were returned and destroyed, and it was ordered that 20 8 per cent. coupon bonds, of $1,000.00 each, be lithographed and substituted for the bonds returned and destroyed.

"(9) On April 29, 1882, contract for building courthouse was let to J. M. Archer for $22,000.00. June 19, 1882, it was ordered that seven bonds, of $1,000.00 each, be issued to complete the courthouse, and that J. W. Posey be continued, to negotiate the sale of the bonds as before.

"(10) May 9, 1882, the county commissioners' court entered an order of record, levying a tax of one-fourth of one per cent. for jail purposes. At the time this order was entered, Nolan county owed no courthouse debt, except the debt created by the bonds mentioned in this agreement as being issued prior to this time.

"(11) November 20, 1882, it was ordered by the county commissioners' court that J. M. Archer, the contractor, be paid three bonds, Nos. 21, 22, and 23, at ninety cents on the dollar, to cover $2,700.00, due him as payment for extra work on the courthouse, over and above said contract.

"(12) On June 2, 1883, it was ordered by the county commissioners' court that W. B. Simpson & Co. be appointed agents to sell courthouse bonds Nos. 24, 25, and 26.

"(13) On November 8, 1883, three bonds of $1,000.00 each, numbered respectively 28, 29, and 30, were, by said court, ordered to be issued to complete the courthouse, and ordered delivered to Thos. Trammell & Co., to be by them sold to the state comptroller for the usual commissions.

"(14) November 15, 1884, report of W. B. Simpson & Co. of sale of bonds Nos. 24, 25, and 26, for $2,900.00, was received by the county commissioners' court, and three per cent. commission thereon for the sale was allowed them.

"(15) From the county records it appears that, by order of the county commissioners' court of said county, courthouse bonds were issued by the said county as follows: First. Series of $20,000.00 courthouse bonds, ordered sold by J. W. Posey, consisting of 20 bonds of $1,000.00 each, being numbered from one to twenty inclusive, dated April 10, 1882. Second. Three bonds, of like tenor and effect as the twenty above named, for $1,000.00 each, being Nos. 21, 22, and 23, and awarded to J. M. Archer for extra work, and were dated June 18, 1882, and were delivered to J. M. Archer by order of the county commissioners' court, November 20, 1882. Third. Three courthouse bonds of $1,000.00, being numbers 24, 25, and 26, which were ordered to be issued and delivered to W. B. Simpson & Co., to be by them sold for the county. These bonds bore date of June 21, 1882. Fourth. Courthouse bond No. 27 bore date of June 21, 1882, and was sold to Flippen, Adue and Lobitt, of Dallas, Texas, by the agent of the county, in the latter part of the year 1883, for $850.00. Fifth. Three courthouse bonds, Nos. 28, 29, and 30, for $1,000.00 each, were issued about November 8, 1883, and were delivered to Thos. Trammell & Co., and were by them sold to the state of Texas. The first nine bonds, mentioned as delivered to Martin, Byrne & Johnson, were issued for the construction of the jail. The other thirty bonds were sold, and their proceeds applied by the county commissioners' court to the construction of a courthouse for Nolan county, and both the jail and the courthouse herein referred to were erected at the county seat of Nolan county.

"(16) The county's agent, J. W. Posey, had twenty-seven of the courthouse bonds delivered to him. Twenty of these, Nos. 1 to 20, inclusive, he sold to Mathews and Whitaker of St. Louis, Missouri, for 92 cents on the dollar, and delivered the same to them on the 5th day of June, 1882; bond No. 27 was sold to Flippen, Adou and Lobitt of Dallas, Texas, for $850.00, and delivered to them in the latter part of the year 1883; and he delivered the three bonds, ordered to be delivered by the county commissioners' court, to J. M. Archer, the contractor, on November 20, 1882. W. B. Simpson & Co., agents of the county, sold and delivered to Wernse & Diechman, of St. Louis, Missouri, the three bonds, Nos. 24, 25, and 26, dated June 21, 1882, on June 19, 1883. Thos. Trammell & Co. sold and delivered to the state of Texas the three bonds, being Nos. 28, 29, and 30, about November 8, 1883. Following is a copy of one of the series of courthouse bonds, issued as above, all of which are of the same tenor and effect, save as to date and serial number:

" 'United States of America, State of Texas.

" 'No. 20.                                                                      $1,000.00.

" 'Nolan County Courthouse Bond.

" 'Interest, 8 per Cent. per Annum. Payable at the City of St. Louis, Missouri. 10/15-Years Bond.

" 'Know all men by these presents, that, in pursuance of an act of the legislature of the state of Texas, entitled "An act authorizing the county commissioners' court of the several counties of this state to issue bonds for the erection of a courthouse, and to levy a tax to pay for the same," approved February 11, 1881, and in further pursuance of an order of the county commissioners' court of the county of Nolan aforesaid, entered upon the records of the court thereof, at the February term, 1882, authorizing the issue of the

bonds of said county, with interest coupons attached, for the purpose of building a courthouse in said Nolan county, said bonds running not exceeding fifteen, and redeemable at the pleasure of said county after ten, years: Now, therefore, the said Nolan county, in the state of Texas, acknowledges itself indebted, and, for value received, promises to pay to ———— or bearer, at the Merchants' National Bank, in the city of St. Louis, and state of Missouri, the sum of one thousand dollars, fifteen years after date hereof, with interest at the rate of eight per centum per annum, payable annually, on the 10th day of April of each year, upon presentation of the proper coupons of interest hereto attached, at the Merchants' National Bank, of the said city of St. Louis, and state of Missouri. And, in case of failure to pay any of said coupons at maturity thereof, the same shall bear interest at the rate of eight per centum per annum from maturity, until paid. This bond is payable at any time after the expiration of ten years, at the option of the county commissioners' court of said Nolan county.

" 'In testimony whereof, the said county of Nolan has executed this bond, by the county judge in and for said county, under the seal of the county commissioners' court thereof, signing his name, and affixing the seal of his office hereto, countersigned by the county clerk, and registered by the treasurer thereof, at the city of Sweetwater, in the county of Nolan, and state of Texas, this 10th day of April, A. D. 1882.      Wm. Barnett,

" '[Seal of County Commissioners' Court.]      Co. Judge, Nolan County.

" 'W. C. Johnson, Co. Clerk, Nolan County Court.

" 'J. H. Fowler, Treasurer.'

"(17) The records of the county treasurer of Nolan county show that courthouse bonds were registered, as follows: March 15, 1882, Nos. 1 to 20, inclusive, for $1,000.00 each, bearing date of March 6, 1882; and seven other bonds, numbered 21 to 27, inclusive, for $1,000.00, dated April 10, 1882, were registered June 23, 1882. There are no other bonds registered in the county treasurer's office. Said records do not show any registration of the bonds involved in this suit.

"(18) On November 16, 1887, an order was passed by the county commissioners' court of Nolan county, and entered upon the records of said court, repudiating all the aforesaid bonds, the entire 39.

"(19) The first three bonds, Nos. 6, 7, and 8, and coupons for interest thereon, declared on in plaintiff's petition, are of the first set above mentioned, issued to pay for the construction of the jail; the bonds Nos. 1, 2, 3, 4, 23, 24, 25, 26, and 27, each for $1,000.00, and the coupons for interest thereon, declared on in plaintiff's petition, are of the second series, and were issued and sold as aforesaid, and their proceeds applied to pay for the construction of a courthouse for Nolan county.

"(20) At the time of making the contract with Martin, Byrne & Johnson to build the jail, Nolan county had no jail or courthouse. At the time of making contract with J. M. Archer to build courthouse, Nolan county had no courthouse, except the jail, which it was then using for courthouse purposes.

"(21) Following is a copy of one of the interest coupons, for an installment of interest on one of the first series of bonds, issued to Martin, Byrne & Johnson, all of which coupons are of the same tenor and effect, save as to amount, time of maturity, serial number, and that they recite that they are for interest on different bonds:

" '6.                                                                                          $80.00.

" 'The county of Nolan, state of Texas, promises to pay bearer eighty dollars, at Sweetwater, Texas, on the 10th day of April, 1888, being interest for one year on bond No. 5.                    William Barnett,

" 'Judge County Court, Nolan County, Texas.'

"(22) Following is a copy of one of the interest coupons, for installment of interest on one of the second series of bonds, issued to pay for the construction of courthouse, all of which coupons are of the same tenor and effect, save as to time of maturity, and that they recite that they are for interest on different bonds:

" '$80.00. $80.00.

" 'On the 10th day of April, A. D. 1888, the county of Nolan, in the state of Texas, promises to pay to —— or bearer, the sum of eighty dollars, payable at the Merchants' National Bank, in the city of St. Louis, state of Missouri, being one year's interest, due to date, on bond No. 20, issued in behalf of the said Nolan county. If not paid at maturity, to bear interest therefrom, at the rate of eight per centum per annum, until paid.

" 'William Barnett, County Judge Nolan County.

" 'W. C. Johnson, Clerk County Court, Nolan County.'

"(23) At the time the bonds and coupons, hereinbefore mentioned and described, were executed, William Barnett was county judge of Nolan county, W. C. Johnson was county clerk of said county, and J. H. Fowler was the treasurer thereof, and that their respective signatures, appearing on the said bonds and coupons, are genuine.

"(24) That plaintiff is the owner and holder of the bonds and coupons mentioned and described in his petition; that he purchased the same in open market, in ordinary course of trade, before the maturity of any or either of the said bonds or coupons, but that he did not purchase any or either of them directly from Nolan county, or its officers or agents; that he purchased the said bonds and coupons on the 5th day of December, 1885, and paid the full face or par value therefor, and that, when he purchased the said bonds and coupons, and paid the consideration therefor, he had no knowledge whatsoever of any defect, irregularity, or infirmity in the issuance or disposition of the said bonds, or any or either of them, nor of any want of power in Nolan county to issue them, save such constructive notice as the law imputes to him by reason of the recitals in the bonds, the minutes of the commissioners' court of Nolan county, the assessment rolls of said county, and notice of the law authorizing and governing the issue of bonds by counties in Texas, and the limitation placed upon their issuance by the law. And the question, whether or not the law charges plaintiff with notice of the contents of such recitals, minutes, and assessment rolls, is left to the decision of this court, as well as whether or not plaintiff, in making the purchase of said bonds, was bound to inquire into the condition of Nolan county, and the action of the commissioners' court concerning the issuance of the said bonds.

"(25) That the coupons sued upon by plaintiff in this cause were clipped from the bonds mentioned and described in his petition, respectively, and that they represented installments of interest due on the said bonds for the years 1888, 1889, 1890, 1891, 1892, and 1893.

"(26) The county commissioners' court of Nolan county, for the years 1881, 1882, 1883, 1884, and 1885, levied and collected a tax of one-fourth of one per cent. on the assessed values of the county for courthouse purposes and a tax of one-fourth of one per cent. for jail purposes, and, for the years since 1885, one-fourth of one per cent. for courthouse purposes, and has paid all interest falling due on each of the 39 bonds, each year, as the same became due, except one or two years, when there was a few months' delay in the payment of interest on some of the said bonds, up to and including the installment of interest due April 10, 1887.

"(28) The ownership of the respective bonds, issued by Nolan county, as hereinabove recited, is as follows: First. The state of Texas purchased bonds Nos. 1, 2, 3, and 4 of the first series, issued to Martin, Byrne & Johnson, or bearer, and also Nos. 10, 11, 13, and 14 of the first series of regular courthouse bonds, ordered sold by J. W. Posey, as hereinabove stated, and also courthouse bonds Nos. 28, 29, and 30, issued as hereinabove recited. The state of Texas instituted suit upon the coupons attached to these bonds, in the district court of Travis county on the —— day of ——, 1889, and recovered judgment in said court thereon, on the 25th day of October, 1889, which said judgment was affirmed, on appeal, by the supreme court of Texas, December —, 1891. Second. Plaintiff in this cause, Quaker City National Bank, owns bonds Nos. 6, 7, and 8 of the first series, issued to Martin, Byrne & Johnson, as hereinbefore recited, and also bonds Nos. 1, 2, 3, 4, 24, 25, 26, and 27 of the second series of bonds, issued for courthouse purposes, and ordered sold by J. W. Posey, as hereinabove recited, and the

matured coupons upon said bonds are in controversy in this suit. Third. Alonzo White, of Missouri, is the owner of Nos. 5 and 9 of the first series of bonds, hereinabove recited as issued to Martin, Byrne & Johnson; also Nos. 5, 6, 7, 8, 9, 15, 16, 17, 18, 19, and 20 of the second series of courthouse bonds. Fourth. Bonds Nos. 21, 22, and 23 of the courthouse issue, and disposed of as hereinabove recited, are in the possession of Flippen, Adoue & Lobit, of Dallas, Texas, who claim to be the owners thereof, and no action has been instituted thereon in any court.

"(29) It is further agreed, by and between the parties to this suit, that the foregoing shall be and constitute the facts to be used on the trial of said cause, and that the said cause may be tried and determined by the court upon said facts, and the law applicable thereto, and trial by jury is expressly waived.                        Leake, Henry, Miller & Reeves,
                                            "Cowan & Fisher,
                                        "Attys. for Defendant, Nolan County.
                                            "Williams & Butts,
            "Attorneys for Plaintiff, Quaker City National Bank."

"Now comes Quaker City National Bank, plaintiff in above entitled cause, by Willams & Butts, its attorneys, and Nolan county, defendant, by its attorneys, Leake, Henry, Miller & Reeves and Cowan & Fisher, and, as a supplement to the agreed statement of facts heretofore made, agree, for the purpose of a trial of said cause, to the following additional facts, to wit: On August 2, 1881, the county commissioners' court of Nolan county, (defendant,) at a special session of said court, examined and approved the assessment rolls of Nolan county for the taxes of the year 1881. On August 14, 1882, the county commissioners' court of Nolan county, at a regular term, examined and approved the assessment rolls of Nolan county for the taxes of the year 1882. On October 11, 1883, the county commissioners' court of Nolan county, at a special session, examined and approved the assessment rolls of Nolan county for the taxes of the year 1883.
                                        "Leake, Henry, Miller & Reeves,
                                        "Cowan & Fisher,
                                            "Attys. for Deft., Nolan County.
                                        "Williams & Butts,
            "Attys. for Plaintiff, Quaker City National Bank."

### 3. Article 11, § 7, of the constitution of the state of Texas, says:

"But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund."

### 4. The act of February 11, 1881, is as follows:

"Section 1. Be it enacted by the legislature of the state of Texas that the county commissioners' court of any county which has no courthouse at the county seat, is hereby authorized and empowered to issue the bonds of said county, with interest coupons attached, in such amount as may be necessary to erect a suitable building for a court house; said bonds running not exceeding fifteen years and redeemable at the pleasure of the county, and bearing interest at a rate not exceeding eight per cent per annum.

"Sec. 2. The commissioners' court of the county shall levy an annual ad valorem tax on the property in said county sufficient to pay the interest and create a sinking fund for the redemption of said bonds not to exceed one-fourth of one per cent for any one year.

"Sec. 3. The county shall not issue a larger number of bonds than a tax of one-fourth of one per cent annually will liquidate in ten years and such bonds shall be sold only at their face, or par value.

"Sec. 4. The interest on said bonds shall be paid annually on the 10th day of April, and they shall be registered and an account kept by the county treasurer of the amount of principal and interest paid on each.

"Sec. 5. Said bonds shall be signed by the county judge and countersigned by the county clerk and registered by the county treasurer before they are delivered." Gen. Laws 1881, pp. 5, 6.

5. Article 8, § 9, of the state constitution, as amended in 1883, limits the expenditures of a county for public buildings to 25 cents on the $100.

6. The supreme court of Texas in the case of Citizens' Bank v. City of Terrell, 78 Tex. 456, 457, 14 S. W. 1003, says:

"While our constitution authorizes the creation of a debt, and the issuance of its negotiable bonds, by the defendant city, to provide for constructing water works, its mandate is ·imperative that no such debt shall be created without making provision, at the time of its creation, to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least 2 per cent. on the principal. Until that is done, the debt is not created, and none exists."

In the same case the following language occurs, on page 456:

"But, where authority to create a debt at all, or beyond a given amount, is made to depend upon evidence furnished by official records, the same rule in regard to recitals contained in bonds given for the debt should not be applied. Every holder of such bonds is charged with a knowledge of the provisions of the law relating to their issuance, and, if the law points to the records as evidence of the existence of the facts required to authorize their issuance, or to limit the amount of the debt the city may create, such records, and not the recitals in the bonds, must be looked to by every one who proposes to deal in the bonds."

The following cases are to the same effect: Dixon Co. v. Field, 111 U. S. 84, 4 Sup. Ct. 315; Lake Co. v. Graham, 130 U. S. 682, 9 Sup. Ct. 654; Nolan Co. v. State, 83 Tex. 183, 17 S. W. 823; Francis v. Howard Co., 4 C. C. A. 460, 54 Fed. 487, and 50 Fed. 60.

7. The question that presents itself at the threshold, in the case at bar, is, whether any one of the different series of bonds sued on was valid, under article 11, § 7, of the constitution of Texas, when issued and delivered. The commissioners' court of Nolan county, in the years 1881, 1882, 1883, 1884, and 1885, levied and collected a tax of one-fourth of one per cent. on the assessed values of said county for courthouse purposes, and a tax of one-fourth of one per cent. for jail purposes, but no provision has been shown by said court, at the time those bonds were issued and delivered, to assess and collect annually a sufficient sum to pay the interest and create a sinking fund of at least two per cent. on the principal. In Nolan Co. v. State, 83 Tex. 190, 17 S. W. 823, bonds of the same series with those now under consideration were before the supreme court of Texas, and were passed upon by that high tribunal. The agreed statements of facts were substantially the same in that case as in this. The court found that bonds 28, 29, and 30 were valid. Those numbered 10, 11, 12, 13, and 14, being of the series of courthouse bonds from 1 to 20, were invalid, and those numbered 1, 2, 3, and 4, issued to Martin, Byrne & Johnson, of which 6, 7, and 8, now sued on, are of the same series, were good in part. The court also found that 24, 25, and 26, sued on in the case at bar, were each valid. Bonds 1, 2, 3, and 4, of the bonds sued on, are of the series of courthouse bonds which said court declared to be invalid, from 1 to 20. See pages 198 and 199, 83 Tex., and pages 828 and 829, 17 S. W. The court, in the above case, seems to have passed on the validity of said bonds, under the assessment and tax rolls of Nolan county at the dates said bonds were issued. The question

of making provision, at the date of the issuance of said bonds, to assess and collect annually a sufficient sum to pay the interest thereon, and provide at least two per cent. sinking fund, it seems, was not called to the attention of the court by the counsel in the case, so far as appears by the reported decision. Neither the pleadings, nor briefs of the able counsel in the case, raise this question; indeed, this provision of the constitution is only referred to once, and then incidentally by the court. See page 200, 83 Tex., and page 829, 17 S. W.

The bonds themselves, from which the coupons sued on in this case were detached, were not involved in the Nolan county case, further than they were of the same series with the bonds from which the coupons there sued on were detached. We are of the opinion that none of the bonds, from which the coupons sued on in this case were detached, were valid on account of the failure to comply with said constitutional provision at the date of the issuance of said bonds.

8. Plaintiff in this case, in his supplemental petition, says:

"That if, for any reason, its said bonds were invalid when issued by defendant county, that the same have been validated, and made legal and binding obligations of defendant, by the act of the legislature of the state of Texas, approved March 24, 1885, validating bonds bought by the state school fund; that the state of Texas owned a portion of said series of bonds, issued by the defendant county, and that plaintiff also owns, and here sues upon, a portion of each series of bonds issued by defendant; that the issuance of each series of bonds by defendant county was one act, and the legislature could only validate the bonds, or any of them, by validating the act of the commissioners' court, by which said bonds were issued; that, by validating the bonds of defendant county owned by the state of Texas, the legislature of the state of Texas, by the act aforesaid, also validated plaintiff's bonds, and made them legal and binding obligations of defendant county."

Sections 3 and 4 of the act of March 24, 1885, (Gen. Laws Tex. p. 41,) are as follows:

"Sec. 3. In all cases where the proceeds of the sale of any bonds have been received by the proper officers of the county or by a party acting for it in negotiating the sale thereof, such county shall be thereafter estopped from denying the validity of such bonds so issued and the same shall be held to be valid and binding obligations of the county, and in any action upon such bonds or coupons thereto, judgment shall be rendered against the county for the amount of the bonds sued on and interest thereon at the rate mentioned therein, deducting such amounts, if any, as have been previously paid thereon. "Sec. 4. The payment of any interest upon any bonds heretofore purchased or that may hereafter be purchased, with public school funds, or belonging thereto, shall be deemed and held a waiver of any supposed error, irregularity or want of authority affecting, or tending to affect the validity of any such bonds, and the same shall thereafter be held valid and binding obligations upon the county by which they appear or purport to have been issued, notwithstanding any such supposed error, irregularity or want of authority as aforesaid."

If the power of the legislature to validate the bonds in question be conceded, then it would seem that the coupons involved in this case would be validated, under section 3 of the act of March 24, 1885, above set out; for the plaintiff has alleged and proved that the county of Nolan got the proceeds of said bonds and used them, some in constructing a jail, and some in constructing a courthouse.

We do not think that section 4 of said act of March 24, 1885, relates to, or intended to validate, the bonds now in controversy. That section relates to bonds purchased with the school fund, and the fact that some of ·the bonds now in controversy (by reason of this suit on coupons detached therefrom) were of the same series and issue with some other bonds purchased by the school fund, would not validate the bonds involved in this case.    Could the legislature validate any of,the bonds involved in this suit?

If, at the date of their issuance, it had no power to release the counties of Texas·from a compliance with the provisions of article 11, § 7, of the state constitution of Texas, it still has no power. by retroactive legislation, to validate bonds issued in violation of said section.    That section is still in the constitution, and in force. Cooley, Const. Lim. p. 457; Suth. St. Const. § 483; Katzenberger v. Aberdeen, 121 U. S. 172, 7 Sup. Ct. 947.

Let judgment be entered for the defendant.