WILLIAMS, County Treasurer, et al. v. CARROLL. (No. 38.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 11, 1915. On Motion for Rehearing, Jan. 6, 1916.)

1. CONSTITUTIONAL LAW ⬤➞13, 16 — CONSTRUCTION.
    The fundamental rule in the interpretation and construction of the Constitution is to give effect to the intent of the people who adopted it, and the court, in case of ambiguity in the language, may consider the prior state of the law, the subject-matter and purpose sought to be accomplished, and the proceedings of the constitutional convention and attending circumstances.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 9, 10, 12, 16; Dec. Dig. ⬤➞13, 16.]

2. CONSTITUTIONAL LAW ⬤➞14—CONSTRUCTION.
    It is a general rule of interpretation that words are to be understood in their usual and best-known signification.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 11; Dec. Dig. ⬤➞14.]

3. CONSTITUTIONAL LAW ⬤➞14—CONSTRUCTION.
    The court should endeavor to so interpret it as to leave none of its language meaningless and without effect, trying to enforce and sustain every sentence and paragraph.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 11; Dec. Dig. ⬤➞14.]

4. CONSTITUTIONAL LAW ⬤➞16 — CONSTRUCTION.
    When necessary to resort to extrinsic sources to aid in construing the Constitution, the courts will resort to the history of the time and the condition of affairs leading to the enactment of the particular provision to ascertain its purpose, and thereafter such provision will be construed, so far as reasonably possible, to further such purpose.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 12, 16; Dec. Dig. ⬤➞16.]

5. CONSTITUTIONAL LAW ⬤➞19 — CONSTRUCTION.
    Contemporaneous and practical construction of constitutional provisions by the Legislature in the enactment of laws has great weight, and will be followed by the courts, if possible, without doing violence to the fair meaning of the words used in the Constitution.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 14, 15; Dec. Dig. ⬤➞19.]

6. COUNTIES ⬤➞190—TAXATION — CONSTITUTIONAL LIMITS.
    Under Const. art. 8, § 9, providing the maximum levy for each of the purposes named, though there is no express provision declaring

that money raised for a specific purpose shall be used for that purpose alone, any expenditure for any purpose in excess of the limitation fixed on that particular fund, whether it be done by direct or indirect means, as by transferring and shifting funds raised by levy for one purpose to a fund for another purpose, is unconstitutional.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. ☞190.]

7. COUNTIES ☞190—TAXATION—CONSTITUTIONAL LIMITS—"STREET"—"ROAD."

Const. art. 8, § 9, provides for an annual levy for the erection of public buildings, streets, and other permanent improvements not to exceed 25 cents on the $100 valuation, and for an annual levy of 30 cents per $100 valuation for roads and bridges. *Held*, that the total levy for roads and bridges is not increased to 55 cents, since a "street" generally means a passageway within the bounds of a municipal corporation, while "road" means a county highway forming a communication between the city limits of one city or town and the city limits of another city or town, so that the levy for streets must be restricted to streets within a city or town, when such streets are continuations of public roads.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. ☞190.

For other definitions, see Words and Phrases, First and Second Series, Street; Road.]

8. COUNTIES ☞190—TAXATION—CONSTITUTIONAL LIMITS—"COUNTY PURPOSE."

Under Const. art. 8, § 9, providing the rate of taxation for city or county purposes, and also the rate for roads and bridges, the levy for county purposes cannot be used for roads and bridges of the county, for, although the maintenance of roads and bridges would ordinarily be considered a "county purpose," the specification of levies for special county purposes apart from that for general county purposes indicates that those specially provided for are not county purposes within the section.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. ☞190.

For other definitions, see Words and Phrases, First and Second Series, County Purpose.]

9. COUNTIES ☞190—TAXATION—TRANSFER OF FUNDS—STATUTE.

Const. art. 8, § 9, provides the maximum levy for the several purposes specified. Vernon's Sayles' Ann. Civ. St. 1914, art. 1440, provides that the commissioners' court shall have power to transfer money from one fund to another, if deemed necessary and proper. *Held,* that the statute should be construed to accord with the Constitution, and that it authorizes the transfer of funds only when such transfer will not make possible the expenditure from one fund of a sum greater than the constitutional limitation of levy for such purpose.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. ☞190.]

10. INJUNCTION ☞76—OFFICERS—TAXATION—TRANSFER OF FUNDS—DISCRETION OF COMMISSIONERS.

The court has no power to interfere with the commissioners' court in the exercise of a statutory judgment or discretion upon its part to transfer the excess of a fund raised for one county purpose to the fund of another, so long as the exercise of such discretion does not exceed constitutional limitations.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 145, 150, 157; Dec. Dig. ☞76.]

11. COUNTIES ☞196—TAXPAYER'S ACTION—PARTIES.

In a taxpayer's action to restrain the commissioners' court of a county from transferring $40,000 realized from a tax for general county purposes to the road and bridge fund of the county, which would make possible an expendi-ture from such fund in excess of the constitutional limitation, the holders of outstanding warrants against the road and bridge fund, issued before service of the temporary restraining order, were not necessary parties; the action not being an attack upon the validity of the warrants.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ☞196.]

12. COUNTIES ☞196—TAXPAYER'S ACTION—BURDEN OF PROOF.

In a taxpayer's action to restrain the commissioners' court of a county from transferring to the road and bridge fund funds raised by a levy for county purposes, the burden of proof to show the transfer would result in road and bridge expenditure in excess of the constitutional 30 cents per $100 valuation rate allowed for road and bridge purposes was upon plaintiff.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ☞196.]

13. COUNTIES ☞196—TAXPAYER'S ACTION—BURDEN OF PROOF.

Where plaintiff showed that for several years there were transferred into the road and bridge fund such excessive amounts, the burden of proof was on defendants to show that on account of authorized expenditures for streets in municipalities the total expenditure for roads and bridges was within the constitutional limit.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ☞196.]

### On Motion for Rehearing.

14. COUNTIES ☞190—TAXATION—TRANSFER OF FUNDS—STATUTE.

Const. art. 8, § 9, sets only the maximum amounts which can be expended through the specified funds, and the statute (article 1440), recognizing the impossibility of foretelling precisely the amounts required for expenditure from the various funds for any year, permits transfer from one fund to another, so long as the effect of such transfer is not to make possible an expenditure from the augmented fund greater than the Constitution permits.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 303, 304; Dec. Dig. ☞190.]

15. COUNTIES ☞196—TAXATION—TAXPAYER'S ACTION—RELIEF.

In a taxpayer's action against the commissioners' court of a county to prevent its expending from the road and bridge fund amounts in excess of the constitutional limit, plaintiff's bill must be limited to the relief sought, and unlawful amounts levied and expended for road and bridge purposes in previous years are beyond the reach of the injunction.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ☞196.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by W. M. Carroll against H. L. Williams, County Treasurer of Jefferson County, and others. From a judgment for plaintiff, defendants appeal. Judgment reformed and affirmed.

Geo. D. Anderson and Jas. A. Harrison, both of Beaumont, for appellants. Chenault O'Brien and George Chilton, both of Beaumont, for appellee.

CONLEY, C. J. This was an action by W. M. Carroll, as a taxpaying citizen of Jefferson county, in his own behalf, and in behalf of all other persons similarly situated, against H. L. Williams, county treasurer of Jefferson

county, Tex;, and against R. W. Wilson, county judge, George W. Caswell, B. J. Johnson, J. B. Peek, and W. M. Carroll, as county commissioners of Jefferson county, Tex. The suit was for an injunction to restrain and prevent the transfer by the county treasurer, under an order of the commissioners' court previously made, of the sum of $40,000 realized from a tax for general county purposes, under levy of 25 cents on the $100 valuation for the year 1914, to the road and bridge fund of said county, or, if the transfer had already been made, then to enjoin the payment of said money on warrants drawn on that fund.

The petition in substance alleged: That the order for the transfer was made on May 15, 1915, and that under and by virtue of section 9, article 8, of the Texas Constitution, the commissioners' court could not levy to exceed a maximum tax of 30 cents on the $100 valuation for road and bridge purposes. That such tax was not sufficient to meet the annual expenditures for road and bridge purposes, and had not been for several years prior thereto, and for the purpose of acquiring additional amounts for expenditures from that fund the commissioners' court for the past four years had been in the habit and it was their custom to levy a greater tax for other purposes than was required to meet the expenditures for such purposes, and then to transfer the excess of such funds to the road and bridge fund. That in this way they were expending more money on roads and bridges than was allowed by the Constitution. That for the year 1914 they levied the full sum of 25 cents on the $100 valuation for county purposes, knowing that such amount was not required to meet the demands on the county purpose fund, but doing it for the purpose of creating an excess in that fund, so that they might transfer such excess to the road and bridge fund. That the $40,000 transfer complained of was from the general fund to the road and bridge fund, and that by adding this sum to the amount which had already been taxed for such purpose would far exceed the 30 cents on the $100 valuation allowed for road and bridge purposes.

Appellants, answering, claim that under the Constitution and laws of Texas Jefferson county had the power and right to levy a tax of 30 cents on the $100 valuation for road and bridge purposes, and had the further right to levy 25 cents on the $100 valuation for *streets*, sewers, waterworks, and other permanent improvements, making in all a total of 55 cents, which, they contended, could be levied for road and bridge purposes, and that for the year 1914 they had levied less than 30 cents on the $100 valuation for such purposes, and that the transfer of the additional sum of $40,000 from the general fund to the road and bridge fund did not swell it to an excess of the constitutional amount allowed for such purposes. They also denied the allegations as to purposely and knowingly levying taxes for the other funds in excess of the amounts required therein, with the intent to transfer such excessive amounts in said funds, when collected, to the road and bridge fund.

Upon the presentation of the petition to Hon. W. H. Davidson, district judge of the Fifty-Eighth judicial district court, a temporary restraining order, as prayed for, was granted, and the cause set down for hearing at a later date. After the hearing, at which testimony was adduced, the trial court entered an order reciting that he found the allegations in plaintiff's petition substantially true, and granted a temporary injunction restraining the disbursement of the $40,000, or what was left of it, in the payment of warrants drawn on the road and bridge fund; it having developed at the hearing that immediately after the order of the commissioners' court had been made, and before the service of the temporary restraining order, the sum of $2,650 had been paid, out of the $40,000 transferred, on warrants presented to the county treasurer on the road and bridge fund. From this order an appeal was perfected, and is now prosecuted in behalf of the appellants.

Appellants further contend that, if necessary so to do, they also have the right and authority to levy 25 cents on the $100 valuation for "county purposes," and if the exigencies require it to transfer the excess of such general fund to the road and bridge fund and to expend the same for the latter purpose. They further insist that the use of the word "streets" in that provision of the Constitution which authorizes a levy of 25 cents "for the erection of public buildings, streets, sewers, waterworks and other permanent improvements," when used with reference to counties, means roads throughout the county, whether in a city or not; that this section plainly shows that it was intended to permit a certain tax levy in favor of counties and cities for general construction and maintenance of roads and streets, and a further tax of 25 cents to build new streets or roads, which are permanent in their nature; and that therefore they have not exceeded, by the transfer of funds or otherwise, the constitutional amount they were authorized to expend for road and bridge purposes. To substantiate these assertions, they rely upon article 8, section 9, of the Texas Constitution, and article 1440, Vernon's Sayles' Texas Civil Statutes.

Section 9, article 8, of the Constitution, reads as follows:

"No county, city or town shall levy more than 25 cents for city or county purposes, and not exceeding 15 cents for roads and bridges, and not exceeding 15 cents to pay jurors, on the one hundred dollars valuation. * * * And for the erection of public buildings, streets, sewers, waterworks, and other permanent improvements, not to exceed 25 cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected

for the further maintenance of the public roads: Provided, that a majority of the qualified property tax paying voters of the county, voting at an election to be held for that purpose, shall vote such tax, not to exceed 15 cents on the one hundred dollars valuation of property subject to taxation in such county."

An analysis of the different provisions of this section authorizes the county to make the following levies: (1) Not more than 25 cents on the $100 valuation for county purposes. (2) Not more than 15 cents for roads and bridges. (3) Not more than 15 cents to pay jurors. (4) Not exceeding 25 cents for the erection of public buildings, *streets*, sewers, waterworks, and other public improvements, except as in the Constitution otherwise provided. (5) Not to exceed 15 cents on the $100 valuation for the *further* maintenance of public roads, when authorized by vote of the qualified tax paying voters of the county, voting at an election held for that purpose.

In the sense that all laws in conflict with these provisions are void, the above section and article is self-executing; but in so far as anything is required to be done to carry it into effect it is not so, because it prescribes no rules by which any act could be done in the enforcement of its requirements. Mitchell County v. Bank, 91 Tex. 371. The Legislature, however, has made appropriate provision for putting into effect the above section and article, in so far as counties are concerned, by the enactment of articles 2242, 7357, and —— of Vernon's Sayles' Civil Statutes. In accordance with the provisions of the statute, an election was held in Jefferson county in the year 1904 to determine whether or not the additional 15 cents on the $100 valuation should be levied, and, this election having carried, the commissioners' court has been levying the same ever since.

[1] The appellee urges that the maximum limit of the taxes authorized by the Constitution to be levied by the commissioners' court of the county for road and bridge purposes is fixed at 30 cents on the $100 valuation, and that the method and manner of levying taxes for the different funds in excess of the amounts required therefor, and the subsequent transfer of the excess amounts in such funds to the road and bridge fund, as has been the alleged custom and practice of the commissioners' court, is a subterfuge, and accomplishes indirectly what is prohibited by the Constitution. Before undertaking to interpret this section of the Constitution, or solve the issues thus presented, it may be well to here state some of the general rules by which the court is to be guided in the matter of the interpretation and construction of constitutional provisions generally:

"The fundamental rule for the government of the courts in the interpretation or construction of the Constitution is to give effect to the intent of the people who adopted it. The meaning of the Constitution is fixed when it is adopted; and it is not different at any subsequent time when a court has occasion to pass upon it. * * * Where its terms are plain and definite, that which the words declare is the meaning of the instrument. In such instances there is no room for construction; the words of the instrument lie before the court already molded to their use, and its province extends no further than the enforcement of the language as written. If the terms of a particular provision are ambiguous, and other parts of the instrument do not make them plain, under another well-established rule the court is at liberty to consider the prior state of the law, the subject-matter, and the purpose sought to be accomplished, as well as to consult the proceedings of the convention and the attending circumstances, for whatever extrinsic aid they may render the court in its effort to discover the true meaning of the provision." Cox v. Robison (Sup.) 150 S. W. 1151.

[2, 3] It is a general rule of interpretation that words are to be understood in their usual and best-known signification. The courts, in construing the Constitution, should endeavor to put a construction and interpretation thereon that will not leave any of its language meaningless and without effect, but should try to enforce and sustain every sentence and paragraph, for it should be assumed that they were put there for a purpose.

[4] When it becomes necessary to resort to extrinsic sources to aid in construction, the courts will resort to the history of the time, and the conditions of affairs which led to the enactment of the provision in question, with a view to ascertaining its object and purpose, and then such provision should be construed in a way, so far as reasonably possible, to further the known object and purposes for which it was adopted.

[5] Contemporaneous and practical construction of the constitutional provisions by the legislative department in the enactment of the laws necessarily has great weight with the judiciary, and such practical construction will be followed by the courts, if it can be done without doing violence to the fair meaning of the words used. Legislative construction of the constitutional provisions, adopted and acted on with the acquiescence of the people for many years, is entitled to great weight with the courts, and will not be disturbed, except for manifest error. 8 Cyc. 735 et seq.

[6] It can be said with no degree of uncertainty that the meaning of this section of the Constitution authorizing the levy of a tax of 25 cents on the $100 valuation for permanent improvements in which *streets* are enumerated, a tax of 30 cents for roads and bridges, and a tax of 25 cents for "county purposes," when the construction of roads and bridges is a part of the business of the commissioners' court, and a "county purpose," is not plain, when we are asked to ascertain from the language itself the maximum tax which can be levied for roads and bridges, and for that reason we are permitted to seek whatever information we can to make the same certain and to arrive at its true meaning.

We may better understand this provision of the Constitution if we understand its history.

Taking up the history of section 9, article 8, of the Constitution, it would seem that this section as originally adopted in 1876, allowed a county to levy a tax of not more than one-half of the amount allowed to the state (the state being allowed 50 cents exclusive of the tax allowed to pay the public debt), and for the erection of public buildings tax not to exceed 50 cents on the $100 valuation. Neither the Constitution of 1845, 1861, nor 1869 fixed a limit for the tax rate for state, county, or municipal purposes, but left it to the discretion of the Legislature; the provisions of each of said Constitutions, in this regard, being almost if not quite identical, and declaring in substance that taxation should be equal and uniform throughout the state, and that all property in this state should be taxed in proportion to its value, to be ascertained as directed by law. Harris, Texas Constitution, p. 584.

The original provision of the Constitution of 1876 fixed the total limit of tax levies by commissioners' courts, outside of levy to take care of payment of debts incurred prior to the adoption of the Constitution, at 75 cents on the $100 valuation, to wit, 25 cents for general purposes, and 50 cents for the erection of public buildings. In 1883 this section was amended by allowing a levy of not to exceed 25 cents on the $100 valuation for county purposes, 15 cents for road and bridge purposes, and 25 cents for the erection of public buildings, *streets*, sewers, and other permanent improvements, making a total maximum tax of 65 cents on the $100 valuation. This did not include a tax to pay debts incurred previous to the adoption of the Constitution. In 1890 this section was again amended, allowing tax levies as follows: Not to exceed 25 cents for county purposes, 15 cents for roads and bridges, and 25 cents for permanent improvements, including the erection of public buildings, streets, sewers, and waterworks, and other permanent improvements, and 15 cents additional for the maintenance of public roads, provided the majority of the qualified taxpaying voters, at an election held in the county for that purpose, voted for the same, making a total maximum tax of 80 cents. In 1907 the amendment authorizing a levy of not more than 15 cents to pay jurors was adopted, and added to the Constitution, and the status of this article and section then assumed the shape it is now in, making a total maximum levy of 95 cents.

It will be seen from these facts that this section in the Constitutions of 1845, 1861, and 1866 provided for a general tax, which the Legislature and the commissioners' court could levy without limit, and apportion to whatever legitimate purposes they saw fit. In the adoption of this section in the Constitution of 1876, we see an effort for the first time upon the part of the organic law to limit and apportion the tax which the Legislature and commissioners' court might assess. Under the amendment of 1883 we see a more pronounced effort to limit and apportion such taxes, and in the amendment of 1890 and 1907 a still further effort to regulate such matters. Now there must have been some cause or reason for this.

Turning to the Constitutional Journal of 1875, page 37, we find a resolution introduced in the early days of the convention to this effect:

"Whereas, in the nature of their government, the governments are the great principles necessary to restore confidence and elevate people to prosperity and happiness; and

"Whereas, in the nature of their government, the government has no right or power to impose burdens on them for any purpose whatever, except for revenues sufficient to administer the same:

"Therefore be it resolved by the convention of the people of Texas that there ought to be a clause placed in the organic law restraining the Legislature or taxing power of the state from levying taxes upon the people for any other purpose whatsoever except revenues sufficient to strictly and economically administer the government."

Again, on page 378, Id., in a report of the committee on revenues and taxations, we find this language used in the preamble of the report submitting the scheme of revenues and taxation for the proposed Constitution, to wit:

"This committee, to whom has been intrusted the consideration of the question of revenue and taxation, in the correct solution of which are involved the necessity of immediate relief to the overburdened taxpayers of the state, and at the same time the antagonistic requirements for increase of revenues and the avoidance of future sale of state responsibilities, have endeavored to define a system of taxation, based upon consideration of natural rights, and upon correct principles of political economy, *limiting the assessment and expenditure* strictly to legitimate objects of government and to so guard the *definements, as to* prevent future variance and abuses. With these objects in view, they have directed me to report the accompanying article, and ask its consideration by the convention as part of the Constitution."

Then said report sets out a limitation on the taxing power for state purposes and for county purposes and the method and manner of its apportionment, etc. From this language it is evident that there was a well-grounded distrust in the general power and authority theretofore vested in the Legislature and commissioners' court, under the broad provisions of the other three Constitutions, in the matter of levying unlimited taxes, and in the indiscriminate amounts which could be expended for any particular state or county purposes. Such wide latitude probably resulted in extravagant expenditures and waste of money in conducting the different affairs of the state and county, and to remedy this evil the constitutional convention thought it proper to limit the assessment and expenditures strictly to the economical administration of the government, and to that end fixed the maximum limit of taxa-

tion for any one year, and in a way undertook to apportion the amounts which could be levied and expended for any particular purpose. The constitutional amendments following in the succeeding years are but manifestations of a like feeling upon the part of the people, and a further effort to define and limit the levying of taxes and expenditures of public moneys, and to fix and apportion what amounts should be allowed towards the upkeep, construction, and maintenance of certain projects, constituting the county and state business.

In the case of Dean v. Lufkin, 54 Tex. 271, Judge Gould, in the year 1881, speaking of this original section of the Constitution of 1876, said:

"We think, moreover, that the purpose of the Constitution was to limit county taxation for ordinary purposes, including the erection of public buildings, thereby seeking to guard against extravagant expenditures."

Appellant earnestly contends that there is no express provision in the Constitution that money raised for a specific purpose shall be used for that purpose alone, or that it cannot be applied to another county purpose, and that it does not necessarily follow that, because a limitation is placed on the amount counties can levy for taxes for certain enumerated purposes, the Legislature is prohibited from authorizing counties to apply money collected for one county purpose to the use of another county purpose, and that if the Constitution had any such intention it would have been expressed in unmistakable terms, and that, therefore, there being no such express provision in the state Constitution, the Legislature, having plenary powers and control over county funds, can authorize counties to apply funds obtained by taxation to a use or purpose different from that originally designated; in other words, that the limitation, as expressed in the Constitution, applies only to the rate of taxation, and not to the amount that can be expended for any particular purpose.

We believe it was the object and purpose of the Constitution in this section and article to put a definite limitation upon the *levy and expenditures* of the funds for the purposes in the several apportionments mentioned therein, and an examination of the decisions dealing with this provision but emphasizes that conclusion. In the case of Dean v. Lufkin, 54 Tex. 265, the commissioners' court of Galveston county in 1879 levied a county tax of 7 cents to create a sinking fund to pay registered county warrants issued for indebtedness subsequent to 1876, and for an indebtedness incurred before that date, and also to create a sinking fund to pay warrants issued to April, 1876. The commissioners' court at the time had already exhausted the limit allowed to pay ordinary debts—that is, 25 cents on a $100 valuation—and the 7 cents, so far as it was made to pay ordinary debts, was in excess of that rate. In an applica-

tion to enjoin the collection of the tax the court said:

"The tax of 7 cents on the $100 valuation of property was avowedly levied to pay certain registered warrants, one class of the warrants being for indebtedness subsequent to April, 1876. Having already levied, for ordinary purposes, taxes to the extreme limit allowed, this levy, in so far as it was made to pay ordinary debts, was unauthorized, and the illegality of that purpose infected the entire levy of 7 cents."

In the case of City of Ft. Worth v. Davis, 57 Tex. 225, the city of Ft. Worth undertook to levy a tax for school purposes which was not authorized by the Constitution, and an injunction was applied for to restrain the collection of the tax. In speaking of the constitutional provisions affecting taxation, the court said:

"But in our opinion the Constitution, pervaded throughout as it is by a manifest purpose of limiting the taxing power of the Legislature and of all the municipal or political subdivisions of the state, has clearly expressed that purpose in reference to taxation for public schools, leaving no room for any such implied authority as is claimed. * * * So the ninth section of the article on taxation carefully prescribes the limit to state, county, and city taxation, except for the payment of debts then already incurred. * * * These repeated and guarded constitutional limitations of the taxing power are a prominent feature of that instrument, and are inconsistent with the existence of a legislative power to authorize additional taxation by school districts, unless some affirmative grant of that power be found in the Constitution itself. That power has been expressly granted in the Constitution of 1869. * * * Taxation by school districts was familiar to the framers of the present Constitution. It was the system generally prevailing in other states, by which the deficiencies of a general or state school fund were supplemented. The omission of a provision authorizing that system was plainly intentional, for in addition to what has been said, the journals of the convention show that all propositions embracing that system were voted down. Our conclusion is that the city of Ft. Worth, in its capacity as a school district, had no other power to levy taxes for the support of public schools than can be found expressly authorized in the Constitution."

In Citizens' Bank v. City of Terrell, 78 Tex. 457, 14 S. W. 1005, the city of Terrell undertook to issue bonds for waterworks purposes in excess of the constitutional limitation, and the court, in determining their invalidity, says:

"The * * * provision limiting the amount of debt that cities can charge themselves with had its foundation in a wise public policy. These constitutional restrictions were made for observance, not evasion. A disregard of them by the attempted creation of unlawful debts, whether on account of the purpose or the amount, *may lead to serious complications in the administration of the affairs of municipal government,* growing out of questions that they may give rise to as to whether the property of delinquent taxpayers can be sold so as to confer any right upon the purchaser when the void debt enters to any extent into the tax for which the sale is made. When the debt is void in its inception for want of authority to create it, no subsequent ratification of it by the collection of taxes or otherwise can give to it any validity, nor can there then be such a thing as a bona fide holder of the obligations, with a right to collect them notwithstanding the want of power * * * to create the debt."

While it may be conceded that there is no express provision in the Constitution declaring that money raised for a specific purpose shall be used for that purpose alone, and cannot be applied to any other purpose, yet, in view of the history of section 9, article 8, throwing light upon the object and purpose sought to be accomplished and the evil to be remedied by its adoption, and in further view of the expressions of the courts in treating the limitations therein as imperative, we have had no hesitancy in reaching the conclusion that the levy of any tax, or the creation of any expenditure in any fund, whether it be done by direct means or by indirect methods, as by the transfer and shifting of funds under authority of Rev. St. § 1440, when the effect thereof is to create a fund in excess of the constitutional limitation fixed on that particular fund, is in violation of the Constitution, and will not be permitted.

[7] Now, what is the maximum tax which can be levied, collected, and expended under the Constitution for roads and bridges? It is conceded by all parties to this suit that the commissioners' court can levy 30 cents for that purpose; but appellants claim they have the power under that provision of the Constitution, as hereinbefore stated, which authorizes a tax of 25 cents on the $100 valuation for permanent improvements, in which is mentioned and included streets, to levy such additional amount for the construction of roads, and that it was the intention of the Constitution to permit a certain tax levy in favor of counties and cities for general construction and maintenance of roads, to wit, 30 cents on the $100 valuation, and a further tax levy of 25 cents to build new streets or roads which are permanent in their nature, and that the word "streets" as used in the Constitution is synonymous with the word "roads."

It is a general rule of interpretation that words are to be used in their usual and best-known signification. The word "street" is defined by Webster as "a city road." It is a general term including all *urban* ways which can be or are generally used for the ordinary purpose of travel. Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288–290. In common parlance, the word "streets" is supposed to relate entirely to the avenues and thoroughfares of cities and villages, and not to roads and highways outside of municipal corporations. In re Woolsey, 95 N. Y. 135. Streets and alleys ordinarily relate exclusively to the ways or thoroughfares of towns or cities. They are laid out and dedicated to public use, and especially for the use and convenience of property holders of the towns and cities, by the proprietor thereof, or laid out or established for the same purpose by the corporate authorities. While every street is a highway, every highway is not a street. Debolt v. Carter, 31 Ind. 355–367. "Highway" or "road" is an open way or a public passage; it is ground appropriated for forming a communication between one city or town and another. Hutson v. City of New York, 7 N. Y. Super. Ct. (5 Sandf.) 289–312; Telephone Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175. In common usage, the term "road" denotes a township or county highway. The road act, giving an action to any person damaged by means of insufficiency or want of repairs of any public roads of any of the townships of the state, has no application to an accident occurring in consequence of municipal streets in an incorporated municipality being out of order. Carter v. City of Rahway, 55 N. J. Law, 177, 26 Atl. 96.

From these authorities it may be fairly deducible that a "street," as that term is used, generally means a passageway within the bounds of a municipal corporation, and that the word "road" means a county highway forming a communication between the city limits of one city or town and the city limits of another city or town. That this is the meaning of the word "streets," as the same appears in the Constitution, is evident from the fact that the legislative body of Texas, in dealing with a division of jurisdiction over the public highways of the state, in article 854, Vernon's Sayles' Texas Civil Statutes, gives such incorporated cities or towns the exclusive control and power over their streets, alleys, grounds, and highways, and to that end grants them power to open, alter, widen, extend, establish, regulate, grade, clean, and otherwise improve the streets. And articles 923 and 924, Id., further authorizes the levy of taxes to accomplish those purposes. Article 1049, Id., provides that with the consent of the board of aldermen, where *streets* are continuations of public roads, the commissioners' court shall have power to construct bridges and other improvements thereon, which facilitates the practicability of travel on such *streets*, thus again using the term in the sense of highways within the limits of the corporation. Under article 29 of the charter of the city of Beaumont, exclusive control and regulation of all *streets*, *alleys*, public grounds, and highways within the corporate limits is vested in the city council. To that end they may construct, regulate, establish, and change or grade all streets, sidewalks, etc.; and in section 45 et seq. of the charter of the city of Beaumont ample authority is given to the municipal corporation to levy taxes to accomplish those purposes. Article 2241, Vernon's Sayles' Civil Statutes, further enumerating the powers of the commissioners' court, grants general power and authority to said court to lay out and establish, change, and discontinue public roads and highways, and to exercise general control and superintendence over all roads, highways, ferries, and bridges in the county.

Considering these premises, we are of the opinion that the words "streets" and "roads,"

as used in the Constitution, are not synonymous, and therefore that the tax of 25 cents on the $100 valuation as provided for in the Constitution "for the erection of public buildings, streets, sewers, waterworks and other permanent improvements" *must be restricted to the erection of permanent streets within the corporate limits of a city or town, when such street or streets are the continuations of public roads,* and when the consent of the board of aldermen or the city council has been first obtained, to authorize the county commissioners' court to make such improvements. In our opinion, it was not the intention of this provision to authorize a levy of 25 cents on the $100 valuation, to raise revenues with which to build or construct or maintain public roads or bridges outside of the city limits of a municipal corporation, whether they were permanent in their nature or otherwise, and in determining the maximum rate which can be levied for the road and bridge fund this rate cannot be considered.

[8] It is also urged in substance by appellants that the provision of the Constitution authorizing a levy of 25 cents on the $100 valuation for "county purposes" would permit the use of such funds for roads and bridges of the county, for that would be a "county purpose"; in other words, that at least the rate allowed for county purposes might be added to the 30-cent rate to bring it up to the 55-cent total which appellants contend for, providing all of the levy of said 25 cents could be spared for that purpose. It may be conceded as an abstract proposition that the construction, repair, and maintenance of roads and bridges would ordinarily be considered a "county purpose," and where the law allowed the levy of a tax for general "county purposes," without providing for taxes for special "county purposes," such as roads and bridges and other special county purposes, as provided in said section 9, article 8, of the Constitution, that this tax could be used for roads and bridges. However, on the other hand, where the Constitution specifies certain taxes for certain special county purposes, and then also provides for a tax for general county purposes, the words "county purposes" will ordinarily be construed and understood as comprehending purposes not already specially provided for. The Supreme Court, in the case of Lufkin v. Galveston, 63 Tex. 437, speaking on this subject, says:

"As a natural result of this principle, it follows that where in one section a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone. This gives effect to both sections, and prevents the otherwise necessary result that the special section would entirely fail to have any force whatever. * * * This rule of interpretation should certainly be adopted when the Constitution or statute under construction contains language which shows that the general section must yield to the other as to the special subjects prescribed for in the latter."

In the case of Louisville v. Button, 118 Ky. 732, 82 S. W. 293, the city ordinance authorizing a levy of taxes provided the city council should subdivide the levy by showing the amount of taxes levied for each purpose, and also the amount of taxes levied for "general purposes." The different purposes which the ordinance permitted the taxes to be assessed for were schools, sinking funds, police purposes, fire departments, street cleaning, street sprinkling, etc., and for "general purposes." The city council levied the taxes and specified different amounts for different purposes, but failed to mention street sprinkling, and was about to appropriate some of the tax money realized under the levy for general purposes to street sprinkling, when citizens and taxpayers sought an injunction against such misappropriation, which was granted, and in deciding the case the court said:

"The question then narrows itself down in this case to the one whether 'street sprinkling' is embraced in the term 'general purposes.' Without undertaking to define here what may be included in the latter term, we are clear that its being enumerated with some dozen other divisions, each of which is required to be provided for expressly, if at all, negatives the proposition that one embraces the other; for, if that were true, it would be within the power of the council to levy the whole tax under the head of 'general purposes,' defeating entirely the motive of the legislation requiring a particularization of subjects for which taxes are to be levied. The attempted deflection of the 'general purpose' fund complained of was illegal, and was therefore properly enjoined."

From the above authorities, we are of the opinion that the rate of 25 cents on the $100 valuation for "county purposes" cannot be considered as a part of the rate allowed for roads and bridges, and we have reached the final determination that the Constitution fixes the maximum rate for road and bridge purposes at 30 cents on the $100 valuation.

[9, 10] We now come to consider the other question in the case, and that is the interpretation of article 1440, which reads as follows:

"The commissioners' court shall have power, by an order to that effect, to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, except that the funds which belong to class first shall never be diverted from the payment of the claims to which the same are appropriated by article 1438, unless there is an excess of such funds."

The courts of this state have had before them several cases in which they were called upon to review the action of tax-levying bodies, in which attempts were made to evade the constitutional inhibitions set forth in section 9, article 8, by means of transferring money from one fund to another, and they have not hesitated to prevent or nullify any act which resulted in the violation, either directly or indirectly, of the rights of the property owners to protection against unlawful

and unconstitutional tax burdens. In the case of Jefferson County Iron Co. v. Hart, Tax Collector, 18 Tex. Civ. App. 525, 45 S. W. 321, it appears that the commissioners' court of Marion county had levied 25 cents on the $100 valuation for county purposes (the maximum constitutional tax rate for that purpose), but that no actual money was collected for that fund, on account of such taxes having been paid by county scrip. In addition to this tax, the commissioners' court also levied 12½ cents on the $100 valuation for stationery; 12½ cents for jury special, and 20 cents for courthouse repairs, and then, when such taxes were collected, they were transferred to the county purpose fund. The evidence showed that no repairs were contracted for on the courthouse or jail, nor had there been any repairs of much consequence made on either in ten years, although a tax for that purpose had been regularly levied during all that time, and that at the time of the present levy it was further shown that there was something over $2,000 on hand in this fund, which had not been transferred. An injunction was asked restraining the collection of such taxes, and in considering the subject the court said:

"The petition alleges, in effect, that there is no necessity for this tax; that it is levied for the purpose of, and with the intention of, using the fund arising therefrom for the payment of the current expenses of said county, and not for the purpose of repairing the courthouse and jail. These allegations are sustained by the findings of the trial court. Under these facts, if the tax for the 'courthouse repairs' is sustained, it in effect renders nugatory the limitation in the Constitution prohibiting a county from levying a tax in excess of 25 cents on each $100 valuation * * * for county purposes. This provision of the Constitution cannot be defeated in this indirect manner. If this were a case in which the commissioners' court was exercising its discretion as a court in the levy of a tax, we would not feel authorized in interfering with its discretion. The record presents a case in which the commissioners' court, after having levied a tax for county purposes to the full limit authorized by the Constitution, has made an additional levy for the purported purpose of courthouse repairs, when the real purpose and intention is to raise a fund for general county purposes. This seems a means adopted to defeat the limitation on taxation for county purposes imposed by the Constitution. It is the duty of the courts in such a case, when their power is properly invoked, to interfere and prevent the threatened wrong."

In the case of Ault v. Hill County, 111 S. W. 425, it appeared that the tax of 25 cents on the $100 valuation for county purposes was, and for years had been, insufficient to meet the expenditures of the county from that fund, and to remedy the situation the commissioners' court were in the habit of levying and collecting a special tax, which they called the "improvement fund," when in fact no improvements were in contemplation, and in transferring the money so raised to the general county fund purpose. In affirming the judgment of the trial court in holding such levy illegal and void, the Court of Civil Appeals said:

"* * * In addition, it seems * * * very conclusively established that the current revenues, realized from the 25 cents allowed by law to be levied and collected for general county purposes, were entirely inadequate to meet the annual current expenses. So pronounced has been the deficiency of this fund for the purposes stated that the commissioners' court of the county has, in evasion of the limit of 25 cents permitted on each $100 valuation of property, for the past several years, levied and collected a tax of about 12 or 13 cents of the 25 cents allowed on each $100 valuation of property for public buildings, etc., and transferred the amount derived therefrom to the general fund of the county. At the time of the levy of this tax, allowed for public buildings and other permanent improvements, no contract had been entered into for the erection or repair of any such building or other permanent improvement, and no such contract was in contemplation. The last of such levies, prior to the execution of the contract with appellant, was made in the early part of the year 1906, and was not made in contemplation of such contract or the changes and improvements therein specified to be made in the courthouse of Hill county, but for the general purposes of said county, as had been the custom of the court to do for some years prior thereto. The levy and collection of this tax, under the circumstances, however deficient the tax allowed for county purposes may have been to defray the absolutely necessary expenses of the county, were unauthorized and illegal, and furnish no basis for the making of the contract with appellant. * * * The levy of the tax in the early part of the year, upon the pretense and under the guise that it was for improvement purposes, being illegal, cannot be successfully relied upon. * * * The tax, authorized for permanent improvements above referred to, cannot be legally levied or collected, except in contemplation of and for the purpose of constructing such improvements, and to recognize and uphold, for any purpose, a levy and collection of this tax, made as they were, would be to encourage the doing of that which might result in the nullification of the limitation of the Constitution prohibiting a county from levying a tax in excess of 25 cents on the $100 valuation of property for county purposes, and give the stamp of approval to an unauthorized and illegal act. This, of course, the courts will not do. Without the fund derived from the illegal levy and collection of the taxes to which we have adverted, there can be no pretense whatever but that the current expenses of the county very largely exceeded its current revenues; and from our understanding of the evidence it seems clear that even with it the same condition existed. We therefore hold, under the facts before us, that the fund derived from the unauthorized tax levy * * * could not be looked to as a means of paying the debt contracted with appellant."

A writ of error was granted by the Supreme Court in this case, and in reversing the decision of the Court of Civil Appeals (102 Tex. 335, 116 S. W. 359) that court said:

"We agree with the Court of Civil Appeals in the opinion that the course thus taken was a mere attempt to swell the fund allowed for general county purposes, by sums collected under the guise of another power when there were no circumstances justifying its exercise and no real purpose to exercise it. Section 9 of article 8 of the Constitution fixes the maximum rates of taxation that may be levied for the several purposes therein specified, one of which is 'county purposes,' and another is 'the erection of public buildings,' etc. It seems too plain to require argument that the power to tax for the latter purpose cannot lawfully be used as a means of exceeding the limits set to the power to tax for

the former, and this is what had been done before the contract in question was executed."

These decisions and others of this state firmly settle the doctrine that a tax cannot be levied for a purpose authorized by law, when it is not to be used for that purpose, but is intended, when collected, to be transferred to another fund, to be used for a purpose for which it could not legally have been levied under the Constitution. See, also, Petty v. McReynolds, 157 S. W. 184; City Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003.

It is vigorously urged by appellant that all of the cases cited herein and relied upon by appellee only go to the extent of prohibiting the unlawful *levy* of taxes, and that under article 1440, supra, if the tax had been collected and *the money on hand*, that an exclusive discretion is vested in the commissioners' court to transfer the excess thereof from one fund to another, and that this court has no authority to interfere with the judgment of the commissioners' court in that respect. We do not believe that article 1440 vests the commissioners' court with any discretion or authority whatsoever to transfer the excess of one fund to another fund, where the effect of such transfer would place in the latter fund a sum in excess of the constitutional amount which could have been legally levied and used for that fund. It was the intention and purpose of article 8, section 9, of the Constitution to limit the *expenditure* as well as the *levy* of taxes to certain stated amounts. To give to this section of the Constitution the interpretation contended for by appellants would make nugatory the purpose and intent of the provision itself. What would it avail the taxpayer to say that the provision simply means to place a limitation on the tax *levy* for the specific purpose stated, and then to allow the taxes, after collection, to be transferred and switched about so as to permit unlimited and indefinite amounts to be expended through the specific fund for such purpose? This section, if it means anything, means that the money derived from taxes cannot be used in excess of the constitutional provisions for the specified purposes enumerated therein. This court, of course, would have no power to interfere with the commissioners' court in the exercise of a judgment or discretion upon its part to transfer the excess of one fund to that of another, so long as the exercise of such judgment or discretion does not overstep the limitations set out in the Constitution.

We do not consider that the constitutionality of Rev. St. § 1440, is in question in this case, but we do feel and determine that its proper construction and interpretation must be made to square with the purpose and intent of the Constitution, and that the power to transfer the excess of moneys from one fund to another must conform to the limitations stated therein, and that such transfer cannot be made when the effect of such

transfer is, either directly or indirectly, to expend more money on those specified projects than is allowed by the Constitution.

The alleged specific wrongful act complained of by the appellee in the petition filed herein is the attempted appropriation under the order of the commissioners' court of the sum of $40,000 raised by taxation for "general county purposes" to the road and bridge fund, to be expended for road and bridge purposes; it being contended that the adding of that amount to the road and bridge fund exceeds the constitutional limitation of funds allowed for such purpose; and in this connection, appellee contends that it has been the custom of, and that the commissioners' court has knowingly and with a preconceived purpose and design, levied more taxes for the general fund, the jury fund, and the contingent fund, for the several years past, including the year 1914, than was necessary to meet the lawful expenditures rightly chargeable to such funds, so as to create an excess in such funds, that such excess might be available for transfer to the road and bridge fund, in evasion of the constitutional prohibition, and that on this account the taxpaying property owners of the county have been subjected for the last four years, by reason of such unlawful customs and schemes of the commissioners' court in such manipulation of tax levies and transfers of funds, to burdensome taxation for the maintenance, construction, and upkeep of roads and bridges.

The trial court found that the allegations and contentions of the appellee were substantially true. The testimony introduced upon the trial of this cause shows the following facts:

On November 1, 1910, there remained a balance of cash in the jury fund of Jefferson county of $3,205.92, and for the next succeeding 12 months there was collected in taxes levied and assessed to pay jurors, and also from occupation taxes, jury fees, etc., which went into this fund, the sum of $24,520.15. During the 12 months prior to November 1, 1911, there had been paid to jurors out of the jury fund the sum of $10,974.69, and transferred out of the fund into the road and bridge fund the sum of $10,000. In 1911 the commissioners' court levied a tax for jurors of 2 cents on each $100 valuation of property in Jefferson county. On November 1, 1911, there was a balance in the jury fund of $6,751.39. During the year there was received into this fund for jurors $23,092.43, and prior to November 1, 1912, there was paid out of this fund for jurors $12,869.25, and transferred to the road and bridge fund $13,000. In 1912 the commissioners' court levied a tax in the same amount as for the previous year, 2 cents on each $100 valuation of property, and from this tax, together with other sources of this fund, was received $26,-973.69, to which amount should be added a balance remaining on hand from the previ-

ous year of this fund of $3,974.54. During the year previous to November 1, 1913, the commissioners' court transferred out of this jury fund $9,100 to the road and bridge fund, and paid out of this fund for jurors $16,018.13. On November 1, 1913, there remained a balance in the jury fund of $5,830.13, and in 1913 the commissioners' court levied a tax of 2 cents, the same as the previous year, for the payment of jurors, and the receipts into this fund from the property and occupation taxes, etc., during the year previous to November 1, 1914, was $30,313.95, and during said year $15,799.38 was paid out to jurors, and there was then transferred to the road and bridge fund $4,000.

In 1911 the commissioners' court levied a tax of 16 cents on each $100 valuation of property for general purposes, which taxes were collected and paid into the general fund in due course, and $18,500 of said amount so collected was transferred to the road and bridge fund. In 1912, although the commissioners' court from the former year's tax of 16 cents for general purposes was able to realize a sum sufficient to pay all demands against this fund and then transfer $18,500 to the road and bridge fund, the commissioners' court raised the county ad valorem or general purpose tax to 25 cents on each $100 valuation of property of the county. During the year from November 1, 1912, to November 1, 1913, the commissioners' court paid out of the general fund $92,681, and transferred to the road and bridge fund $31,625. In 1913 the same tax of 25 cents was levied for general purposes, and out of this tax money there was paid out for the 12 months previous to November 1, 1914, for general purposes, $89,039.49, and transferred to the road and bridge fund $45,000.

For the year 1911 the commissioners' court levied a tax of one-half of 1 cent on each $100 valuation of property for the so-called contingent fund, and during the same year paid out of this fund $108.90, and transferred to road and bridge fund $2,012.26. In 1912, although only the sum of $108.90 had been lawfully paid out of this fund during the previous year, and all of the balance transferred to the road and bridge fund, the commissioners' court raised the amount of this tax to 1½ cents and during the year paid out of the contingent fund in the regular way $122.58, and transferred to the road and bridge fund $6,167.76. In 1913 the amount of this tax was the same as for 1912, from which was received during the 12 months prior to November 1, 1914, $6,808.85, all of which was transferred to the road and bridge fund.

With reference to the taxes levied and collected for road and bridge purposes, the record shows the following:

In 1911 the commissioners' court levied a tax of 15 cents on each $100 valuation of property, to pay interest and sinking fund on road and bridge bonds outstanding, and also a tax of 15 cents for current road and bridge fund, which made the total amount taxed that year for road and bridge purposes the full 30 cents. In 1912 the commissioners' court, to pay interest and sinking fund on road and bridge bonds, levied a tax of 15 cents, and for the current road and bridge fund 15 cents. In 1913 the commissioners' court levied a tax of 15 cents to pay interest and sinking fund on road and bridge bonds, and also 15 cents for the current road and bridge fund. In 1914 the commissioners' court levied and collected a tax of 12.05 cents on each $100 valuation of property for interest and sinking fund and road and bridge bonds, and 15 cents for the current road and bridge fund.

Summarizing the figures contained above, it is found that in the year 1911 there was received into the road and bridge fund, from taxes lawfully levied for said fund, the sum of $63,427.61, and paid out of this fund $107,928.81; in 1912, received for road and bridge fund from taxes lawfully collected $65,603.24, and paid out of this fund $113,180.98; in 1913, received into this fund for taxes collected for road and bridge purposes $69,597.22, and paid out $125,633.11. The difference in the amounts received into this fund for taxes lawfully collected for roads and bridges and the amounts paid out was made up by transfers from other funds, as heretofore shown. The amounts herein specified in sums of money do not include, and have no reference to, the taxes collected every year for the interest and sinking fund on the road and bridge bonds. The assessed valuation of all property in Jefferson county, as is shown by the assessors' rolls for the past four years, is as follows:

1911 ........................$44,000,564.08
1912 ........................ 45,681,692.00
1913 ........................ 49,299,934.00
1914 ........................ 50,703,025.00

In 1911 the commissioners' court transferred out of the general jury and contingent funds altogether $44,501.20, and by taking the assessed value of property for that year, and making a mathematical calculation as to the percentage, it will be found that in order to raise the amount transferred would have required a tax of approximately 10 cents on each $100 valuation of property in Jefferson county. For the year 1911 the commissioners' court levied the maximum amount allowed by the Constitution and statutes for the road and bridge fund and for the payment of interest and sinking fund on road and bridge bonds, which was 30 cents on each $100 valuation, and indirectly, by collecting taxes for other purposes and transferring them to the road and bridge fund, approximately 10 cents on each $100 valuation, thus making the amount collected and expended for that year for roads and bridges approximately 40 cents on each $100 valuation of property in Jefferson county. In

1912 the commissioners' court transferred tax money levied and collected for other purposes into the road and bridge fund in the sum of $43,577, and by taking the assessed valuation of that year it will be found that to raise said amount would require taxation amounting to over 10 cents on the $100 valuation. The commissioners' court in that year (1912) regularly assessed for roads and bridges 30 cents on each $100 valuation of property for the current road and bridge fund and for the payment of interest and sinking fund on road and bridge bonds. It will therefore be seen that the total tax levied for that year, and collected, directly and indirectly, for road and bridge purposes, was over 40 cents on each $100 valuation of property. In 1913 the commissioners' court transferred from the general fund, jury fund, and contingent fund into the road and bridge fund $63,035.89, which represented tax money levied and collected for general county purposes, for the jury, and for the contingent fund. This year (1913) the court levied and collected in the regular way for the current road and bridge fund, and for the payment of the interest and sinking fund on the road and bridge bonds, a tax of 30 cents on each $100 valuation of the property in the county. The amount transferred from other funds to the road and bridge fund, $63,035.89, represented a taxation amounting to approximately 13 cents on each $100 valuation of property in the county, and therefore the tax levy and the money expended in Jefferson county, directly and indirectly, in 1913 for roads and bridges, amounted to approximately 43 cents on each $100 valuation. The assessed valuation of all property for taxation in Jefferson county for 1914 was $50,703,025, and for this year the commissioners' court levied and collected for roads and bridges, and to pay interest and sinking fund on road and bridge bonds, a tax of 27.05 cents on each $100 valuation of property. To swell this fund by an addition of $40,000 would require a tax that would of necessity approximate 8 cents on each $100 valuation of property in Jefferson county, and would equal a tax, directly and indirectly, of 35.05 cents on each $100 valuation for roads and bridge purposes—that is, the amount actually appropriated out of this year's taxes for roads and bridges would have been 5.05 cents more than the maximum amount allowed by law for such expenditure.

It is evident from these proceedings and transactions that the commissioners' court realized that the amount of taxes received for the road and bridge fund under the constitutional levy of 30 cents on the $100 valuation was not sufficient to meet the demands on that fund, and that they undertook, by the indirect means herein set forth, to swell that fund so as to meet the ever-growing demands upon the same. Such practice has been condemned by all the courts of this state whenever the matter has reached them, and such acts declared illegal. It is not the province of this court to consider or determine the exigencies calling for the construction, upkeep, and maintenance of the public roads, that they may be kept in harmony with the spirit and progress of the community, however prone to that view we might be, but simply to apply the unrelenting principles of the law to the facts as we find them, and to see that such expenditures do not exceed the constitutional limitation.

[11] The appellant urges that the holders of the outstanding warrants against the road and bridge fund were necessary parties to this suit. The instant action is not an attack upon the validity of these warrants, and they will continue a valid and existing indebtedness against the county, regardless of the disposition of this suit. The holders of such warrants have no rights to be litigated, which would authorize them to swell the road and bridge fund beyond the constitutional limitation, so that their claims might be paid.

We do not consider the case of Pendleton v. Ferguson, 99 Tex. 301, 89 S. W. 758, in point on the question of parties. That was a suit to enjoin the city treasurer from obeying an order of the city council to pay warrants issued in previous years out of a fund raised during the present year; the plaintiff claiming that he, being the holder of a warrant for the present year, was entitled to priority of payment of same. Under such circumstances it was held that the holders of warrants for the previous years were necessary parties, in that they were materially interested in the subject-matter of the suit. The instant case does not contain a question affecting matters between the owners of warrants, such as priority of payment out of a fund legally existing for the payment of such indebtedness, but is a suit to restrain public officers having charge of taxing funds from creating an illegal fund to liquidate such indebtedness, and the payment of sums out of such fund in contravention of the Constitution.

It is contended by appellants that the injunction ought not to have been issued, for the reason that under any view of the case the commissioners' court had the right to charge such sums of money as were expended on streets within the limits of municipal corporations in the county to the 25 cents on the $100 valuation allowed for the "erection of public buildings, streets," etc.; that the evidence shows without dispute that many miles of shell road, for which bonds were provided, were erected in the cities and towns of Jefferson county—no evidence as to the number of miles, but that such streets cost from $5,000 to $6,000 per mile—and that as a matter of law whatever tax it was necessary to levy to raise a sinking fund and to pay interest on this portion of said bonds, should be charged to said 25-cent rate, and then, if this was done, the general road and

bridge tax, and the rate levied therefor, would have a clear margin.

[12, 13] The burden of proof to show that funds were raised and expended in excess of the 30-cent rate allowed for road and bridge purposes was upon the appellee. The evidence introduced upon that subject, in the nature of copies of the official tax levies for the several years, including the year 1914, show that all levies were for "road and bridge bonds" and for "roads and bridges." Without any further explanation in reference to this matter, it follows that all such levies were made under the two 15-cents provisions of the Constitution hereinbefore set out. And the other evidence introduced on the subject of the various transfers of additional sums into the road and bridge fund indicate a clear excess of the amounts in those funds for the several years mentioned. If there was any explanation to be made of this matter, it was incumbent upon appellants to show that the statute governing the expenditures of county funds on the streets of municipalities had been complied with, and that the commissioners were authorized to make such expenditures. Such expenditures are only authorized when the streets are continuations of the public roads, and with permission to make such expenditures first obtained from the city council. It was also incumbent, on account of the nature of the evidence introduced by appellee, for the appellant to have shown the number of miles of streets constructed within the limits of municipal corporations, and the cost of same, so that a basis for such calculation or estimate might be made. The trial court was therefore, in the state of the record, justified in considering all of the bond issues chargeable to the two 15-cent rates provided in the Constitution.

Under our conception of this case, the commissioners' court was permitted by the Constitution of this state to levy and expend for and through the road and bridge fund for the current year 1914 a maximum sum equal to a tax of 30 cents on the $100 valuation of taxable property of the county. Based on this valuation of $50,703,025, such a sum would equal $152,109. It would appear that for the year 1914 the total tax levied for road and bridge purposes was 27.05 cents on each $100 valuation. Based on the taxable valuation of property in the county, for that year, as above stated, this would net a tax of $137,051. The difference between these amounts, to wit, $14,958, represents the sum less than the full 30-cent rendition which the commissioners' court was authorized to make, or, in other words, the amount which could have been legally raised for the road and bridge fund by a lawful tax fixed for that purpose for the year 1914, which was not included in the levy of 27.05 cents. It further appears from the record that the road and bridge fund had remaining in it at the time of the proposed transfer complained of

about the total sum of $4,176.70. It also appears that prior to the service of the injunction $2,560 of the transferred amount had been used in payment of outstanding warrants. This would make a total of $6,736.70. This amount, deducted from the said $14,958, leaves a balance of $8,222, and this amount, we think, can still be applied to the road and bridge fund for 1914 out of the $40,000 transferred without exceeding the 30-cent levy allowed for that year.

The judgment of the lower court is therefore reformed, so as to allow an additional payment of $8,222 out of said $40,000 fund to the road and bridge fund, and the judgment of the lower court awarding the injunction is in all other respects affirmed.

Reformed and affirmed.

## On Motion for Rehearing.

[14] Appellee, in his motion for rehearing, contends that we erred in holding that any part of the tax money refunded in this suit, which tax money was realized by taxation for "county purposes," could be lawfully used for the construction of roads and bridges. Article 1440, Vernon's Sayles' Civil Statutes, authorizing the transfer of the excess in the different funds from one such fund to another, recognizes the impossibility of foretelling just exactly how much money will be required for expenditure through the various funds for any current year. It is beyond the reach of the mind to look into the future and to make accurate prognostications affecting such matters. In the ordinary manipulation of such funds, and under the most careful supervision, there is liable to be more or less money in the one or the other than is needed; and to meet such contingencies, and to thereby adjust the finances accordingly, this statute was enacted. The constitutional provisions we have discussed are only concerned with the *maximum* amounts which can be expended through the several funds therein named, and have no intention of regulating such expenditures when the amounts are less than the maximum.

[15] In considering appellants' motion for rehearing, we have concluded that appellees' bill must be limited to the relief sought; that is, to restrict the unlawful expenditure, through the road and bridge fund, of the tax revenues of the county for the current year 1914. The unlawful amounts levied and expended for road and bridge purposes in previous years is beyond the reach of the injunction. Upon further consideration we have concluded that it is immaterial what amount was in the road and bridge fund at the time the transfer was made. Whatever money was on hand in that fund came from the 27.05-cent tax levy for 1914, inasmuch as no previous transfers from other funds into the road and bridge fund had been made for that year. We were therefore in error in making the deduction of $4,176.

This opinion is therefore reformed, by allowing an additional payment of $12,398 out of said $40,000, instead of $8,222. The costs in this case are apportioned as follows: One-third against appellee, and two-thirds against appellants.