



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M. R. Bullock
County Attorney
Pecos County
Fort Stockton, Texas

Dear Sir:

Opinion No. O-1082
Re: (a) The ad valorem tax which
counties may levy for the erec-
tion of public buildings and other
permanent improvements, under the
Constitution, Sec. 9, Art. 8, is
the proper tax to be levied for
public park purposes authorized
by Art. 7068, Revised statutes.
(b) Current operating expenses of
county parks must be paid out of
the general county purpose fund.

You have submitted to this office the following question:

"Article 6078, Revised Statutes, provides for
the levying and collection by the Commissioners
Court of a tax not to exceed five cents on the
one hundred dollars valuation for the purchase
and improvement of lands for county parks.

"We assume that this statute is subject to
the terms of Article 8, Section 9, of the Consti-
tution, but it fails to designate which of the
constitutional county funds it shall be a part,
and to which, if any, of the constitutional county
funds the five cent park levy should be charged.
The question has arisen in Pecos County whether the
above mentioned five cent levy for county parks
should be allocated to and charged as a part of
the constitutional county 'permanent improvement
fund,' and, if not, to what established fund, if
any, the park fund should be charged?"

Insofar as we have been able to ascertain, the question
has never been passed upon by our courts or this Department.



Hon. M. R. Bullock, Page #2.

We must, therefore, look to the Constitution and statutes for our answer.

Section 9, Article 8, limits the authority of any county to levy ad valorem taxes to certain purposes and prescribes maximum rate for each purpose. No county may levy taxes in excess of (a) for general administration purposes, twenty-five cents; (b) for roads and bridges, fifteen cents; (c) to pay jurors, fifteen cents; (d) for the erection of public buildings ... and other permanent improvements, twenty-five cents on the one hundred dollars valuation.

Money raised by taxation for one of these enumerated purposes may not be expended for another of said purposes. Williams v. Carroll, 182 S.W. 29; 202 S.W. 504. The question is, therefore, an important one.

Article 6078, Revised Statutes, authorizes the commissioners' court of any county to levy and collect a tax not to exceed five cents on each one hundred dollars of assessed valuation of the county "for the purchase and improvement of lands for use as county parks," after the proposition has been submitted to and ratified by the property tax-paying voters of the county. The full power and control over such a park is vested in said court and it "may levy and collect an annual tax sufficient in their judgment to properly maintain such parks and build and construct pavilions and such other buildings as they may deem necessary, lay out and open driveways and walks, pave the same or any part thereof, set out trees and shrubbery, construct ditches or lakes, and make such other improvements as they may deem proper. Such parks shall remain open for the free use of the public under such reasonable rules and regulations as said court may prescribe."

It is obvious that the money with which to purchase a park site and to improve the same must be paid from the general purpose or the permanent improvement fund of the county derived from the ad valorem tax levied and collected under the authority conferred and limitations imposed by Section 9, Article 8, supra. The statute is silent as to which of these funds is the proper one to bear the expense. It is provided in Article 6079, Revised Civil Statutes, "All revenue from the sale of such privileges or concessions shall go into a fund for the maintenance of said parks."

The Legislature has authorized any county of this State to establish and maintain public parks. Such parks are

established for the benevolent purpose of promoting health, happiness and general welfare of not only the citizens of the county, but of the people generally. The character of the improvements specifically mentioned in the statute are designed to accomplish that purpose. Lewis vs. City of Fort Worth, (Sup. Ct.) 89 S.W. (2d) 975.

The buildings to be erected on the site are undoubtedly "public buildings", and all of the other named improvements authorized by the statute to be made thereon are "permanent improvements" within the meaning of those terms as used in that provision of Section 9, Article 8, supra, authorizing a county to levy a tax "for the erection of public buildings ... and other permanent improvements."

It appears to us that the only appropriate tax that could be levied and collected for such purposes is the tax to which we have just referred. This is undoubtedly true as to the public buildings and other permanent improvements made on the park site. In order that it may not be thought that we have overlooked the fact that the constitutional section under review provides "for the erection of public buildings ...," and not for the purchase of the site upon which such building is to be erected, we will briefly discuss that phase of the section.

In the case of Moon vs. Alred, 277 S.W. 787, error dismissed, the court held that an election authorizing the issuance of bonds "for the purpose of the erection and equipping of the courthouse and the county jail and the purchasing of a site or sites therefor" was not void for want of authority to include the propositions for the purchase of site and equipment in the election order. The statute involved was Article 718, which in part, reads:

"After having been authorized as provided in Chapter One of this title, the commissioners court of a county may lawfully issue bonds of said county for the following purposes:

"To erect the county courthouse and jail, or either."

With the other purposes named, we are not here concerned.

The court held that whenever a power is given by statute, everything necessary to make it effectual or requisite to

attain the end sought is implied. The effect of the opinion is that notwithstanding the statute provided for the issuance of bonds "to erect" the county courthouse and jail, or either, the court was empowered to purchase sites for each and pay for same out of the proceeds received from the sale of the bonds.

The opinion is important for the reason that the money obtained for the erection of county courthouses and jails must come from the taxes levied and collected under that provision of Section 9, Article 8, supra, relating to the erection of public buildings and other permanent improvements. Anderson vs. Parsley (Civ. App.), 37 S. W. (2d) 358, error refused.

We believe the reasoning of the court in this case is equally applicable to the constitutional section under review. In fact, such is the effect of the opinion, for both the statute and said section use the term "to erect." The Constitution controls the statute. When the exact term "to erect", used in both, is construed as used in the statute, it necessarily follows that the same construction is, by implication, given to that term as used in the Constitution to which the statute relates. A public building cannot be erected without a site upon which to erect it. Article 6078 specifically authorizes the court to purchase land and improve the same by constructing buildings thereon, etc. It follows that the land for park purposes may be acquired and paid for out of the same fund available for the erection of public buildings and other permanent improvements.

It is our further opinion that current operating expenses of such parks must be paid out of the general purpose fund of the county.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
          Bruce W. Bryant
                    Assistant

BWB:pbp

APPROVED
OPINION
COMMITTEE
BY _____ CHAIRMAN

APPROVED AUG 15, 1939

ATTORNEY GENERAL OF TEXAS