

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS      AUSTIN 11, TEXAS

~~XXXXXXXXXXXXXXXXX~~
~~XXXX WILSON~~
ATTORNEY GENERAL

Honorable A. E. Hickerson
County Auditor
Montgomery County
Conroe, Texas

Dear Sir:            Opinion No. O-6762
                           Re:  Proper funds from which to pay
                                for operation and improvement of
                                county airport.

We are in receipt of your letter of recent date requesting the opinion of this department on the above stated matter.  We quote from your letter as follows:

"For your information, we have an airport recently built which is second to none in Texas. It has approximately twelve hundred acres and is approximately four miles from Conroe.  It was built to be used by the Navy Patrol.

"The Navy and the C. A. A. are about to dump it into our lap.  This airport cost approximately a million and half dollars, and the problem confronting the Commissioners' Court today, is from what funds we are to pay for the operation and maintenance of this airport.  Of course, we understand from former rulings, that it was properly financed from the Permanent Improvement Fund.

"It is estimated that it will take twenty-five thousand dollars per year to maintain this port in a manner requested by the C. A. A.  There will be a payroll for salaries of about $12,500 per year, and $12,500 per year for maintaining and sealing the run-ways.

"What we would like to know is from what funds would this be paid.  Would it be possible to set up a tax levy for this expense inasmuch as our General Fund is as usual, badly over-loaded."

Article 1269h, Vernon's Annotated Civil Statutes, in part provides:

"That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire, by purchase without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an airport, or lease, or sell, to the Federal Government, tracts of land either within or without the corporate limits of such city and within the county in which such city is situated, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county.

". . . .

"That in addition to and exclusive of any taxes which may be levied for the interest and sinking fund of any bonds issued under the authority of this Act, the governing body of any city or the Commissioners' Court of any county, falling within the terms hereof, may and is hereby empowered to levy and collect a special tax not to exceed for any one year five cents on each One Hundred Dollars for the purpose of improving, operating, maintaining and conducting any Air Port which such city or county may acquire under the provisions of this Act, and to provide all suitable structures, and facilities therein. Provided that nothing in this Act shall be construed as authorizing any city or county to exceed the limits of indebtedness placed upon it under the Constitution."

Section 9, Article 8, Constitution of Texas (as amended, 1944) provides:

"The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five (35) cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five (25)cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the Amendment September 25, 1883; and for the erection of public buildings, streets, sewers, waterworks and other permanent improvements, not to exceed twenty-five (25) cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution

otherwise provided; provided, however, that the Commissioners Court in any county may re-allocate the foregoing county taxes by changing the rates provided for any of the foregoing purposes by either increasing or decreasing the same, but in no event shall the total of said foregoing county taxes exceed eighty (80) cents on the one hundred dollars valuation, in any one year; provided further, that before the said Commissioners Court may make such re-allocations and changes in said county taxes that the same shall be submitted to the qualified property tax paying voters of such county at a general or special election, and shall be approved by a majority of the qualified property tax paying voters, voting in such election; and provided further, that if and when such re-allocations and changes in the aforesaid county taxes have been approved by the qualified property tax paying voters of any county, as herein provided, such re-allocations and changes shall remain in force and effect for a period of six (6) years from the date of the election at which the same shall be approved, unless the same again shall have been changed by a majority vote of the qualified property tax paying voters of such county, voting on the proposition, after submission by the Commissioners Court at a general or special election for that purpose; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax paying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen (15) cents on the one hundred dollars valuation of the property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws. This section shall not be construed as a limitation of powers delegated to counties, cities or towns by any other section or sections of this Constitution."

Under the provisions of Article 1269h, supra, a tax (exclusive of and in addition to taxes levied for the sinking fund of bonds issued for airports) in an amount not to exceed five cents on each one hundred dollars valuation, may be levied and collected for the purpose of "improving, operating, maintaining and conducting" the county airport, and "to provide all suitable structures and facilities therein." However, the amount of taxes that may be levied for such purposes is not only subject to the limitation of five cents

per one hundred dollars, but it is also subject to the limitations set forth in the above quoted constitutional provisions. In view of the foregoing, such tax when levied cannot operate to increase the total levy for any of the constitutional purposes beyond the limits above set out.

From the information given in your letter, we understand that a part of the contemplated expenses in connection with the airport is for the improvement of the runways. It is apparent that the runways and the improvements thereto are in the nature of permanent improvements. We think, therefore, that the expenses for the improvement of the runways should be allocated as a part of the total levy authorized by the Constitution for permanent improvements, but in no event should such allocation have the effect of increasing the total county levy for permanent improvements beyond the constitutional limit for such purposes.

As to the proper levy within which to allocate the contemplated expenditures for the purpose of paying salaries in connection with the operation of the airport, it has been held that unless some law makes a particular authorized expense a charge against a special fund, such expense must be paid from the general fund. In this connection we quote from the opinion of the Supreme Court in Bexar County v. Mann, 157 S. W. (2d) 134, as follows:

"All county expenditures lawfully authorized to be made by a county must be paid out of the county's general fund, unless there is some law which makes them a charge against a special fund. Williams v. Carroll, Tex. Civ. App., 182 S. W. 29."

In view of the foregoing, it is our opinion that the expenditures for salaries should be allocated as a part of the levy for general purposes, and in no event, should such allocation have the effect of increasing the total levy for general purposes beyond the constitutional limit for such purposes. Also, we point out that the total amount of the allocation or levy for the purposes of "improving, operating, maintaining and conducting" the airport and "to provide suitable structures and facilities therein", should not exceed for any one year the limit of five cents on the one hundred dollars valuation, even though a part of such amount may be allocated as a part of the levy for general purposes and a part allocated within the levy for permanent improvements.

In your letter reference was made to the heavy burden already placed upon the general fund of your county. We

assume that your county is now levying twenty-five cents for
general purposes.  The only means whereby such levy may be
increased is by a re-allocation of tax levies, authorized by
the voters of the county, in conformity with the provisions
of Section 9, Article 8, of the Constitution of Texas (as
amended in 1944).  For a discussion  of this matter, we are
enclosing copies of our Opinions Nos. 0-6278, 0-6427 and
0-6477.

        We trust that the above and foregoing satisfactorily
answers your inquiry.

                        Yours very truly,

                        ATTORNEY GENERAL OF TEXAS


                        By s/J. A. Ellis
                           J. A. Ellis
                             Assistant

JAE:LJ:wc
encls.


APPROVED AUG 9, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman